42 F.3d 1389
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Clay William LONG, Defendant-Appellee.
 No. 94-5117.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1994.
 
 Before: MILBURN and DAUGHTREY, Circuit Judges; and WEIS, Senior Circuit Judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff United States of America appeals the order of the district court granting in part and denying in part defendant Clay William Long's motion to suppress evidence. On appeal, the issue is whether the district court erred in suppressing certain child pornographic evidence seized pursuant to a search warrant. For the reasons that follow, we reverse and remand.
 
 I.
 A.
 
 2
 In early August 1991, a video tape depicting child pornography was discovered at the International Mail Facility in Chicago, Illinois. The video tape was subsequently seized by United States Customs Inspectors and then forwarded to Special Agent Donald Obermiller of the United States Customs Service. On August 13, 1991, after being notified by Special Agent Obermiller of the discovery, Special Agent Brian H. Falvey, also of the United States Customs Service, took possession of the video tape.
 
 
 3
 The envelope containing the video tape was addressed to defendant at his residence, 5018 Marina Cove in Prospect, Kentucky, and revealed that the video tape was mailed from Amsterdam, The Netherlands. The tape itself was electronically formatted to be played on European VCR units only and was incompatible with American VCR units. On the front outer casing of the tape was the title: "Keyhole Teens." The name, "Seventeen," was printed on the top left side of the outer casing. Printed on the bottom of the front outer casing were the words, "Your Key to 14 Candid Amateur Teenies, Volume 3." J.A. 45. On the front casing was the picture of two young females, allegedly with their breasts and genitalia exposed. On the back side of the outer casing were nine photos of nude, or partially nude, young females, along with the following text:
 
 
 4
 Peer into a forbidden teenage world: twelve very young, but extremely randy girls show themselves for the first time in front of the camera. Real amateur items, full of candid camera shots of real school girls who send their little cunts from one orgasm to the other using fingers, vibrators and sexy toys. You won't keep your pants dry!
 
 
 5
 J.A. 61.
 
 
 6
 Included within the tape casing was a Club 17 order form which listed the titles of several magazines offered for sale, including: "Seventeen Special," "Seventeen's Teenager," "Seventeen's School Girl," and "Teeners from Holland." Along with these magazine titles, the order form also offered videos for sale, including: "Love Game," "Anal Teeners," "Teenage Love," "Hot Teeners," "Teenage Lessons," "Teenage Sex Sport," "Teenage Pleasure," "Anal Lust," "Teenage Extreme," "Teeners 1-2," "Channel 17 1-9," "School Girl 1-8," "Summer Camp/Zomer Camp," "Teeners from Holland 1-2," "Keyhole Teens 1-3," "Teenage Perversions 1-2," "Telephone Teens," "Teen World," and "Russian Teens." On the bottom of the order form was the disclaimer:
 
 
 7
 Please note that Seventeen does not take any responsibility in [sic] case sendings are captured by police or customs officials! PAYMENT: In cash (via registered mail!) or by Euro Cheque if amount is over Dfl. 100. Please write cheque in Dutch currency and send it to:
 
 CLUB SEVENTEEN
 P.O. Box 10979
 1001 EZ Amsterdam
 
 8
 J.A. 46-47.
 
 
 9
 On August 15, 1991, Special Agent Falvey was notified that customs inspectors at the International Mail Facility in Chicago had discovered another child pornography tape addressed to defendant at his residence in Prospect, Kentucky. This tape, entitled "Teenage Pleasure," was, just as with the first tape, electronically formatted to be played on European VCR units, was incompatible with American VCR units and was sent from Amsterdam, The Netherlands. The front casing on the tape contained the word, "Seventeen," on the top. Beneath the word "Seventeen" was a picture of allegedly young male and female models engaged in masturbation, oral sodomy and anal intercourse. Beneath the picture on the front outer casing were the captions, "7 Teenagers in Horny Action!," "Lesbian Sex," and "Anal Sex." The back side of the outer casing allegedly depicted male and female models engaged in oral sodomy, anal intercourse, masturbation and lesbianism, with the caption:
 
 
 10
 Take a peek into the erotic world of teenagers. A sparkling teenager film of horny action. Lustfully, young teenagers [sic] girls turn their boyfriends on, leading them to explosive orgasms!
 
 
 11
 J.A. 62.
 
 
 12
 On August 16, 1991, Special Agent Falvey met with Dr. Ken Schikler, a pediatrician employed at the University of Louisville Medical School. After reviewing the two video tapes, Dr. Schikler opined that several of the models appeared to be under 18 years of age, some as young as 14 years old. Special Agent Falvey also viewed the video tapes and described the tapes as depicting genital-genital, oral-genital, and anal-genital intercourse between persons of the same and opposite sex, masturbation, sadistic or masochistic sexual abuse, and lascivious exhibition of the genitals or pubic areas.
 
 
 13
 On October 2, 1991, Special Agent Falvey submitted to the district court an application and affidavit for a search warrant to search defendant's residence at 5018 Marina Cove, Prospect, Kentucky. In his affidavit, Special Agent Falvey averred that based on his experience as an investigator of child pornography, and what he learned from experts in the field, persons having sexual interest in children commonly:
 
 
 14
 (a) receive sexual gratification from physical conduct with and fantasies involving children in sexual activities; (b) collect sexually explicit materials for their sexual arousal; (c) rarely dispose of these sexually explicit materials; (d) correspond with other persons having sexual interest in children; (e) prefer with [sic] contact with children of a particular gender or age; (f) collect and retain photographs of children with whom they have been involved; (g) maintain collections of books, magazines and other writings of sexual activities with children; (h) own and operate photographic reproduction equipment; (i) are very concerned with the security of their collection of illicit materials and commonly secret their collection within their residence or safety deposit boxes; (j) keep names, addresses and telephone numbers of children with whom they have been involved; (k) keep a diary containing records of their sexual activities with children.
 
 
 15
 J.A. 63-64. Based upon his experience and information from experts, Special Agent Falvey stated in the application for a search warrant that he had reason to believe defendant's residence contained:
 
 
 16
 a). VHS video cassette tapes labeled "KEYHOLE TEENS" and "TEENAGE PLEASURE", to include mailing containers bearing international registry numbers 2322 and 1581, respectively, and addressed to Clay W. Long, 5018 Marina Cove, Prospect, Kentucky 40089.
 
 
 17
 b). Films and video cassette tapes containing visual depictions of minors or prepubescent children engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.
 
 
 18
 c). Still camera, video cameras, camcorders, American and/or European video cassette recorders, and other photographic and video recording equipment used or capable of use to produce, play or reproduce video cassettes, photographs, or films depicting minors or prepubescent children engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.
 
 
 19
 d). Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18 United States Code, Section 2256.
 
 
 20
 e). Originals, copies and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18 United States Code, Section 2256.
 
 
 21
 f). Envelopes, letters and correspondence offering to buy, sell or otherwise transmit through the United States Mails, visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.
 
 
 22
 g). Envelopes, letters and other correspondence containing information and intelligence concerning the transmission through the United States Mails of visual depictions of minors engaged in sexually explicit conduct, as defined by Title 18, United States Code, Section 2256.
 
 
 23
 h). Diaries, notebooks and any other records reflecting contact and other activities with minors or prepubescent children visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.
 
 
 24
 J.A. 43. These items were listed in a separate document titled "Attachment A," which accompanied the application for the search warrant.
 
 
 25
 On the same day that Special Agent Falvey submitted his application and affidavit, a United States Magistrate Judge issued a search warrant. In the search warrant, the magistrate judge stated that evidence presented established probable cause to believe that the items described in "Attachment A" were being concealed in defendant's residence in Prospect, Kentucky. Accordingly, the magistrate judge commanded Special Agent Falvey and others to search the premises before October 12, 1991.
 
 
 26
 On October 3, 1991, a controlled delivery of the two video tapes was made to defendant's residence. That same day, Special Agent Falvey, Postal Service Inspector Brad Reeves, and Special Agent Obermiller, executed the search warrant at defendant's residence. In addition to seizing the two video tapes referred to in "Attachment A", the agents seized 19 magazines, a book, a computer printout sheet containing names and telephone numbers, a clear plastic bag containing a crystalline substance, a clear plastic bag containing a green leafy substance, two pieces of alleged drug paraphernalia, two brown envelopes bearing the tag, "Wormerveer," and two postal service forms.[1]
 
 B.
 
 27
 A three count indictment subsequently was returned against defendant. Count one charged that on or about October 3, 1991, defendant in violation of 18 U.S.C. Sec. 2252(a)(2) knowingly received two packages by United States Mail--one which contained a video cassette tape labeled "Keyhole Teens," and one which contained a video cassette tape labeled "Teenage Pleasure"--and that such items visually depicted minors engaged in sexually explicit conduct. Count two charged that on or about October 3, 1991, defendant in violation of 18 U.S.C. Sec. 545 and 19 U.S.C. Sec. 1305, knowingly received after importation two obscene video cassette tapes labeled "Keyhole Teens" and "Teenage Pleasure," knowing that those items had been imported and brought illegally into the United States. Count three charged that on or about October 3, 1991, defendant in violation of 18 U.S.C. Sec. 2252(a)(4)(B) knowingly possessed more than three books, magazines, periodicals, and other matter which had been mailed and transported in interstate and foreign commerce and which contained visual depictions of minors engaging in sexually explicit conduct.
 
 
 28
 Defendant subsequently filed a motion to suppress "all of the evidence seized directly or indirectly from a search conducted at [his] residence on October 3, 1991," J.A. 18, asserting a number of grounds in support of his position. As relevant to this appeal, defendant first argued that there was no probable cause to believe that the two video tapes were at his residence at the time of the search because when the search warrant was issued the two video tapes had yet to be delivered to him. Defendant next argued that even if there was probable cause to believe that the two video tapes were at his residence at the time of the search, there was no probable cause to believe that any additional child pornographic evidence was located at his residence. Finally, defendant argued that the good-faith exception to the exclusionary rule recognized by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984) was not applicable in this case because the supporting affidavit sworn to by Special Agent Falvey was so lacking in indicia of probable cause that a reasonably well-trained officer would have known that the search was illegal despite the magistrate judge's authorization.
 
 
 29
 Defendant's motion was referred to a United States Magistrate Judge. The magistrate judge, who was not the one that issued the search warrant, first recommended denial of defendant's motion to suppress the two video tapes. The magistrate judge concluded that although at the time the search warrant was issued the two video tapes depicting child pornography had not been delivered to defendant, the seizure of those two tapes pursuant to the warrant was nevertheless permissible because there was a substantial basis to conclude that the tapes would be found at defendant's residence by the time the search warrant was executed. However, the magistrate judge recommended granting defendant's motion to suppress the 19 magazines, one book, one computer printout sheet containing names and telephone numbers, one clear plastic bag containing a crystalline substance, one clear plastic bag containing a green leafy substance, two pieces of alleged drug paraphernalia, two brown envelopes bearing the tag, "Wormerveer," and two postal service forms seized by the agents. The magistrate judge determined that the information contained in the affidavit failed to reveal probable cause to believe that any of the seized evidence, other than the two video tapes, would be found at defendant's home at the time of the search. Moreover, the magistrate judge concluded that the good-faith exception to the exclusionary rule was inapplicable in this case.
 
 
 30
 The district court accepted the findings of fact, conclusions of law and recommendations of the magistrate judge. As part of its order, the district court noted that it "agree[d] with the magistrate judge's finding that the information contained in the affidavit of Agent Falvey provided no substantial basis on which to conclude that anything other than the two tapes would be found in the defendant's home." J.A. 57. The district court, however, made no mention of whether the good-faith exception to the exclusionary rule was applicable, although the United States had raised this issue in its objection to the magistrate judge's decision. This timely appeal by the United States followed.[2]
 
 II.
 
 31
 There is no dispute that the magistrate judge who issued the search warrant made a proper finding of probable cause to believe that the two video tapes, "Keyhole Teens" and "Teenage Pleasure," were located in defendant's home. However, the parties on appeal differ on the issue of whether the magistrate judge who issued the search warrant made a proper finding of probable cause to believe that other evidence related to child pornography in addition to the two video tapes was located in defendant's home. According to the United States, common sense dictates that given the circumstances in which defendant had received the two child pornography video tapes, "there was a fair probability, though perhaps not a certainty, that additional child pornography and other evidence would be located at [defendant's] residence." Brief for Plaintiff-Appellant at 10. On the other hand, defendant argues that although Special Agent Falvey may have had probable cause to suspect that the two videotapes portraying minors engaged in sexually explicit conduct would be located at defendant's home, the affidavit filed in support of the application for the search warrant "completely failed to provide any legal basis for concluding that other such materials would be contained [there]." Brief for Defendant-Appellee at 4.
 
 
 32
 "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Loggins, 777 F.2d 336, 338 (6th Cir.1985) (per curiam). Where, as here, the district court acts as a reviewing court of the issuing magistrate judge's decision, we review the district court's findings of fact for clear error and review the district court's determination regarding probable cause de novo. United States v. Leake, 998 F.2d 1359, 1362-63 (6th Cir.1993). In making our determination as to the probable cause issue, we pay "great deference" to the issuing magistrate's determination as to probable cause and recognize that a determination of probable cause by the issuing magistrate judge will be upheld "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing." Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Jones v. United States, 362, U.S. 257, 271 (1960)). See also United States v. Goff, 6 F.3d 363, 366 (6th Cir.1993).
 
 
 33
 In substantially similar contexts, we have upheld the finding of probable cause. In United States v. Rey, 923 F.2d 1217 (6th Cir.1991), an express mail package addressed to "Grace Richardson, 816 Murfreesboro Road, Apt. C-28, Nashville, TN," was intercepted by customs officials. Id. at 1218. On inspection, cocaine was found in the package. After the package was transferred to agents of the Drug Enforcement Administration, the agents obtained search warrants for the package and for the apartment to which it was addressed. Subsequently, a controlled delivery of the package was made to the address, and once the package was delivered the search warrant for the apartment was executed. In addition to the package, the officers executing the search warrant found a variety of electronic equipment, an axe/wrecking bar, a box of ammunition, jewelry, a printed funeral service for Grace Richardson, and numerous books.
 
 
 34
 On appeal, the defendant, the nephew of Grace Richardson, argued, among other things, that although probable cause existed for the seizure of the controlled delivery package, probable cause was lacking for any other evidence in the apartment. We rejected this argument, noting specifically that "other circuits have rejected the claim that a warrant authorizing a search for drug paraphernalia as well as contraband is overbroad, even though based only on the knowledge of a controlled delivery." Id. at 1220 (emphasis added) (citing United States v. Washington, 852 F.2d 803, 804-05 (4th Cir.), cert. denied, 488 U.S. 974 (1988); United States v. Malik, 680 F.2d 1162, 1165 (7th Cir.1982); and United States v. Dubrofsky, 581 F.2d 208, 213 (9th Cir.1978)). However, it was our view that under the totality of the circumstances there was probable cause to issue a warrant for "controlled substances, records of narcotics activities, documents, paraphernalia and other evidence of drug dealing and importation." Id. at 1221 (internal quotations omitted).
 
 
 35
 In United States v. Lawson, 999 F.2d 985 (6th Cir.), cert. denied, 114 S.Ct. 574 (1993), we again determined that the issuing magistrate had a substantial basis for finding probable cause. In Lawson, an Express Mail package addressed to "David Lawson, 4666 State Rt. 43, Kent, Ohio, 44340," was discovered to contain cocaine. Id. at 986. Before the package was delivered via a controlled delivery, a search warrant for the 4666 State Rt. 434 premises was issued. In the affidavit sworn to in support of the warrant, the postal inspector stated that based upon the method the cocaine was packaged and based upon his training and experience in narcotics investigations, it was his belief that the premises would contain the Express Mail package, "records of other Express mailings, cocaine, drug implements used in the sale and distribution of cocaine, triple beam scales, documents, records, cash, ledgers, and receipts related to cocaine transactions." Id. (internal quotations omitted). A subsequent search after the controlled delivery uncovered the delivered package and numerous drug paraphernalia.
 
 
 36
 On appeal, the defendant argued that "the district court was in error in not suppressing evidence obtained in a search of the defendant's residence pursuant to a search warrant that was based upon the discovery in transit of a package addressed to that place and containing an amount of cocaine." Id. at 987. We rejected this argument. In reaching our conclusion, we first noted that in Rey, we had "cited cases from the Fourth, Seventh, and Ninth Circuits as supporting the proposition that if a package in transit is discovered to contain illegal contraband, then that is enough to constitute probable cause for a broader search for additional illegal drugs, drug paraphernalia and documentary evidence at the addressee's residence." Id. at 988. We, however, declined to uphold the search warrant of the premises solely on the basis that a package containing illegal material was "on a 'sure course' to its destination," id. at 988, although we acknowledged that our earlier decision in Rey could be read to stand for such a proposition. Rather, we found it significant that, among other things, the inspector who submitted the affidavit in support of the warrant detailed what he, based on his experience and training, believed would be found at the defendant's residence. Moreover, we failed to discover any evidence which would have implied that the package was sent to the defendant on a "whim" or as part of a "set up." Id. at 988.
 
 
 37
 We conclude that the establishment of probable cause in this case is just as evident as it was in Rey and Lawson. First, packages containing illegal substances--in this case child pornographic materials--were addressed to defendant's residence. Although we need not, and do not, conclude that this fact alone is sufficient to constitute probable cause for a search of defendant's residence for additional child pornographic materials, we determine, as we did in Rey and Lawson, that such circumstances are significant in the determination of probable cause. We again emphasize that other courts, specifically the Fourth Circuit in Washington, the Seventh Circuit in Malik, and the Ninth Circuit in Dubrofsky, have held that where contraband is addressed to a particular place, probable cause exists to issue a warrant for the search of that place for similar types of contraband and related material. Despite defendant's suggestion, we cannot reconsider our prior interpretations of those cases, see United States v. Gilliam, 979 F.2d 436, 437 (6th Cir.1992), cert. denied, 113 S.Ct. 1856 (1993), nor are we willing to find those cases, as well as Rey and Lawson, distinguishable simply because they involved drugs as opposed to child pornography.
 
 
 38
 The second factor which leads us to conclude that probable cause existed to search defendant's residence for child pornographic material other than the two delivered video tapes is that when Special Agent Falvey submitted his affidavit in support of his application for a warrant, he set forth his belief that other evidence related to child pornography would be found in defendant's residence, including books and magazines containing visual depictions of minors engaged in sexually explicit conduct. We recognized the importance of the opinions of a learned law enforcement official in Lawson, when we stressed that the conclusions and inferences stated by a person in light of his experience and training in the relevant field could be given "considerable weight." Lawson, 999 F.2d at 988; see al so id. at 987 ("A judicial officer may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." (internal quotations and citations omitted)). We note that Special Agent Falvey's belief was particularly persuasive here because it was based upon his experience as an investigator of child pornography and upon information he learned from experts in the field. Contrary to defendant's suggestion, Special Agent Falvey's beliefs and opinions are not to be disregarded simply because he failed to state in the affidavit when he was involved in any other investigations of child pornography, the number of child pornography investigations he has undertaken, the role he played in other child pornographic investigations and the names of the experts he relied upon in gaining knowledge with respect to child pornography. Rather, the failure of Special Agent Falvey to state in more detail his qualifications is just one factor in determining the weight to be given to his opinions.
 
 
 39
 The final factor we find significant is that no evidence exists to support an inference that the video tapes depicting minors engaged in sexually explicit conduct were addressed to defendant on a whim or as part of a set up. In fact, the circumstances in this case provided ample evidence for the issuing magistrate judge to conclude that defendant was not a first time user of child pornographic materials. Specifically, it is noteworthy that not one but two tapes were addressed to defendant and that each tape was packaged separately. We have previously recognized that the quantity of contraband from a controlled delivery is a relevant, although not an exclusive, factor in determining whether other contraband would be found at the place of delivery. See Lawson, 999 F.2d at 988. While defendant might be correct in stating that "it cannot be determined from the affidavit whether the two videotapes were separately ordered or were merely part of a single order shipped on separate dates," Brief of Defendant-Appellee 21, a magistrate judge considering whether to issue a warrant could make the reasonable inference that such tapes were independently ordered, thus providing the further reasonable inference that defendant probably had already accumulated child pornographic materials. See United States v. Hatfield, 599 F.2d 759, 762 (6th Cir.1979) ("It may be that ... alternative readings of the affidavit are equally reasonable, but it is neither our nor the district court's function as reviewing courts to substitute our interpretation of the facts in the affidavit for that of the magistrate."). Moreover, we are unpersuaded by defendant's suggestion that because the affidavit revealed no indications of prior illicit activity by defendant involving child pornography, the issuing magistrate judge could not make a finding of probable cause. In Lawson, we determined that probable cause existed even though at the time the warrant was issued there was no evidence that the defendant had previously engaged in illegal activity.[3] Accordingly, we conclude that based on the totality of the circumstances, the magistrate judge issuing the warrant had a substantial basis for finding probable cause.
 
 
 40
 In support of his position that sufficient evidence was lacking to support a finding of probable cause, defendant relies on the Ninth Circuit's decision in United States v. Weber, 923 F.2d 1338 (9th Cir.1990). In Weber, two years after a customs inspector seized a parcel addressed to "P. Webber," which apparently contained material depicting sexual exploitation of children, the United States Customs Service targeted the defendant for investigation. Id. at 1340. As part of the law enforcement operation, Customs officials sent the defendant an undercover test advertisement containing the name and address of a purported distributor of sexually explicit materials. Upon receiving the advertising materials, the defendant placed an order for four sets of pictures depicting children engaged in various sexual acts.
 
 
 41
 Based on this information, a United States Customs Service Special Agent, Trevor Burke, presented a sworn affidavit requesting a warrant to be issued to search the house of defendant after the controlled delivery of the pictures. In his affidavit, agent Burke stated his belief that located in the defendant's home were books, magazines, pamphlets and other materials related to child pornography. In his attempt to establish probable cause that such items existed in the defendant's home, agent Burke set forth in the affidavit a general description of the proclivities of three categories of individuals: "pedophiles," "child molesters," and "child pornography collectors." These descriptions were based on agent Burke's experience and training in child pornography investigations and his discussions with other law enforcement agents, in particular Los Angeles Police Detective Dworin. Nowhere in the affidavit, however, did agent Burke state that making one order for pornographic materials placed the defendant in the three categories. A warrant was subsequently issued and law enforcement officials uncovered 16 child pornographic magazines.
 
 
 42
 Although the defendant's motion to suppress the 16 child pornographic magazines was denied prior to trial, the Ninth Circuit reversed, concluding that there was no probable cause to believe that defendant's home contained any child pornographic materials other than the advertising materials sent via the controlled delivery. In reaching its conclusion, the Ninth Circuit remarked that the expert testimony in the affidavit was foundationless:
 
 
 43
 [The expert testimony] consisted of rambling boilerplate recitations designed to meet all law enforcement needs. It is clear that the "expert" portion of the affidavit was not drafted with the facts of this case or this particular defendant in mind. Agent Burke reported that detective Dworin knew the habits of "child molesters," "pedophiles," and "child pornography collectors" and that from his knowledge of these classes of persons he could expect certain things to be at their houses, from diaries to sexual aids to photo developing equipment. But there was not a whit of evidence in the affidavit indicating that [the defendant] was a "child molester." And the affidavit does not say how many magazines or pictures one must buy in order to be defined as a "collector." It goes without saying that the government could not search [the defendant's] house for evidence to prove [the defendant] was a collector merely by alleging he was a collector. Had agent Burke taken the time and conscientiously drafted an affidavit tailored to what he knew about [the defendant] rather than submitting an affidavit describing generally information about different types of perverts who commit sex crimes against children, he might have realized that he did not know enough about [the defendant] to state that there was reason to believe that [the defendant] was one of the "types" described or possessed any of the habits ascribed to such types. He might have known that a blunderbuss warrant was unjustified.
 
 
 44
 Id. at 1345 (footnote omitted). Accordingly, the Ninth Circuit concluded that the warrant was not supported by probable cause.
 
 
 45
 Defendant's reliance on Weber is unavailing. The critical factor in Weber was that although agent Burke demonstrated that the defendant had an interest in child pornography, as evidenced by the defendant's order of child pornographic materials, § ee id. at 1341, agent Burke failed then to demonstrate that the defendant was either a "pedophile" or a "child pornography collector." To demonstrate that the defendant was either a "pedophile" or a "child pornography collector," however, was imperative in that case because the affidavit asserted that "pedophiles" or "child pornography collectors" typically possess child pornography in such places as their homes. Thus, in Weber the affiant failed to show that the defendant was the type of person who typically possessed child pornography at places such as his home. See United States v. Harvey, 2 F.3d 1318, 1323 (3d Cir.1993) (citing Weber for the proposition that a warrant application must establish that pedophiles retain child pornography and that defendant is a pedophile); United States v. Greany, 929 F.2d 523, 525 (9th Cir.1991) (interpreting Weber as holding that the "purported expert testimony that 'child molesters,' 'pedophiles,' and 'child pornography collectors' would keep such materials in their houses for long periods of time was not relevant to a showing of probable cause because no evidence was presented that [the defendant] fell into one of the identified categories").
 
 
 46
 In contrast to Weber, the affiant in this case demonstrated that defendant was the type of person who typically possessed child pornography at places such as his home. This is because in the affidavit, Special Agent Falvey did not state that "pedophiles" or "child pornography collectors" typically possess child pornography at their homes, but rather stated that "persons having sexual interest in children" commonly collect child pornographic materials in such places as their homes. Unlike the terms "pedophiles" or "child pornography collectors" which require technical definitions, the establishment that a person has "a sexual interest in children," for probable cause purposes, is readily apparent where, as here, such person orders child pornographic materials. See United States v. Rugh, 968 F.2d 750, 754 (8th Cir.1992) (distinguishing Weber on the ground that the government's expert presented facts to support the conclusion that the defendant fit the definition of the type of person who would have retained child pornography). Accordingly, we conclude that the inadequacies found in the warrant in Weber do not exist in the warrant in this case.
 
 
 47
 Defendant argues, however, that if we were to accept the government's position and conclude that the issuing magistrate judge had a substantial basis to find probable cause, then "merely because the two seized videotapes were addressed to [defendant], there would similarly be probable cause to believe that additional evidence would be located at [defendant's] home." Brief of Defendant-Appellee 15. Defendant then asserts that taking the government's position to its logical conclusion, " '[t]here would be no need for the government to plan elaborate schemes for undercover controlled deliveries and no need for the government to [sic] actually to distribute child pornography to achieve law enforcement goals.' " Brief of Defendant-Appellee 16 (quoting Weber, 923 F.2d at 1344). Rather, according to defendant, "merely because two videotapes were addressed to [defendant's] home, a Magistrate could reasonably infer that similar additional evidence would likely be found at [defendant's] home and, therefore, no controlled delivery of the videotapes themselves would be necessary." Brief of Defendant-Appellee 16.
 
 
 48
 Defendant's argument is unpersuasive. Contrary to defendant's suggestion, the mere fact that two video tapes were addressed to defendant is not the sole reason why we believe the issuing magistrate judge had a substantial basis to find probable cause that defendant's home contained child pornographic material in addition to the two delivered videotapes. Rather, our conclusion is based on the totality of the circumstances surrounding the controlled delivery, which takes into account, among other things, the number of items which were addressed and delivered to defendant, the beliefs and inferences stated by the affiant, and the absence of any evidence that the contraband was delivered on a whim or as part of a set up. Because each of these factors have been deemed significant to our determination, we need not speculate what our conclusion would have been in the absence of any of these details. As a consequence, we need not determine whether the statements made by Special Agent Falvey alone are sufficient to establish probable cause to enter and search defendant's home.
 
 
 49
 Even were we to determine that the search warrant was unsupported by probable cause, we conclude that the evidence seized pursuant to the warrant may not be suppressed. In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court created a good-faith exception onto the judicially created exclusionary rule. Pursuant to this exception, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922. Thus, even though a warrant is subsequently declared invalid, evidence seized pursuant to that warrant is admissible so long as the law enforcement official's reliance on the magistrate judge's probable cause determination and on the technical sufficiency of the warrant is objectively reasonable. Id. at 922-23. A law enforcement official will have no reasonable grounds for believing that the warrant was properly issued where 1) the supporting affidavit contains information that affiant knew or should have known is false, 2) the issuing magistrate lacked neutrality and detachment, 3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause exists completely unreasonable, or 4) the warrant is facially deficient. Id. at 923.
 
 
 50
 None of the circumstances mandating suppression of evidence exist in this case. There is no evidence that the magistrate judge was misled by information in the affidavit that Special Agent Falvey knew was false or would have known was false except for his reckless disregard for the truth. There also is no evidence that the issuing magistrate wholly abandoned his judicial role by failing to be neutral and detached. There also is no evidence that Special Agent Falvey's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. At the time the affidavit was sworn to, this court in United States v. Rey, 923 F.2d 1217, 1220-21 (6th Cir.1991), had already suggested that the delivery of contraband to a particular address provides probable cause for a search of related materials at the place where that contraband was delivered. Finally, there is no evidence that the warrant was so facially deficient, i.e., in failing to particularize the place to be searched or the things to be seized, that reliance on the warrant was unreasonable. Accordingly, even if we were to determine that the warrant is invalid, the good faith exception would be applicable in these circumstances.
 
 III.
 
 51
 For the reasons stated, the district court's order granting defendant's motion to suppress is REVERSED and the case is REMANDED for proceedings consistent with this opinion.
 
 
 52
 DAUGHTREY, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's determination that there was probable cause to support the issuance of a warrant for the search of the defendant's residence and the seizure of the two videotapes involved in the "controlled delivery" that occurred in this case. Existing precedent, as the majority points out, leaves little doubt about the correctness of that conclusion. The propriety of the seizure of other incriminating evidence in the defendant's home, based on what amounts to nothing more than speculation, seems much less clear, however. In this respect, I find the analysis of the magistrate judge and the district court more persuasive, especially in its reliance on United States v. Weber, 923 F.2d 1338 (9th Cir.1990), and I would affirm the judgment entered on the basis of their reasoning.
 
 
 53
 Although there are several recently reported cases from the various circuits involving use of the so-called "pedophile profile" to support broadening of the scope of a search warrant beyond the limits of an anticipated "controlled delivery" of child pornography, none is closer to the facts of this case than Weber. Moreover, in each of the other cases, there is some concrete evidence, some "articulable fact," to show that the suspect in question actually fits the profile. In United States v. Rugh, for example, Customs agents had letters written by Rugh to another suspect under investigation in California indicating that Rugh was engaged in producing and distributing child pornography, and that he was sexually abusing a 13-year-old boy. 968 F.2d 750, 752 (8th Cir.1992). In United States v. Rabe, the defendant was lured into an exchange of letters just before the controlled delivery that indicated clearly his interest in collecting child pornography. 848 F.2d 994, 995 (9th Cir.1988). In United States v. Harvey, the investigating agents had information that Harvey had pleaded guilty to various counts of corrupting a minor, that he had previously been deported for "being a pedophile," and that on numerous occasions, he had received mailings from organizations known to distribute or suspected of distributing child pornography. 2 F.3d 1318, 1321 (3d Cir.1993). In United States v. Flippen, officers set up a "sting operation" that produced written correspondence from Flippen in which he described himself as a "collector of child pornography." 674 F.Supp. 536, 538 (E.D.Va.1987), aff'd, 861 F.2d 266 (4th Cir.1988).
 
 
 54
 Even in Weber itself, there was some evidence to support use of the "pedophile profile." Customs officials knew, for example, that less than two years earlier, a parcel sent to "P. Webber" at the defendant's address contained two pieces of advertising material which "apparently depict[ed] the sexual exploitation of children." 923 F.2d at 1340. Customs officials notified Weber that they had seized this material, and Weber acknowledged receipt of the notice of seizure but never claimed the package. Id. As a result, Weber was targeted by Customs as part of a child pornography "sting operation" and was sent advertising material from a fictitious distributor of child pornography. Id. When he placed an order, Customs agents arranged a "controlled delivery" and secured a search warrant for Weber's home. The warrant permitted not only seizure of the materials Weber had ordered, but also various items of evidence related to child pornography and considered contraband under 18 U.S.C. Sec. 2256. Id. at 1340-41.
 
 
 55
 The Weber court described the agents' procedure in securing a search warrant, as follows:
 
 
 56
 To attempt to establish probable cause that the items in paragraph 2 [those outside the "controlled delivery"] would be found in Weber's house, [Agent] Burke set forth in his affidavit a general description of the proclivities of pedophiles. The description was based on Burke's experience and training in child pornography investigations and his discussions with other law enforcement agents--in particular Los Angeles Police Detective Dworin, who had more training and expertise than Burke.
 
 
 57
 Id. at 1341.
 
 
 58
 The information supplied by Dworin was essentially the same as that supplied by the unnamed "expert" in this case, whose credentials are even less apparent than Burke's and Dworin's--indeed, they are not apparent at all. Moreover, in Weber, Customs agents who swore out the warrant knew that material advertising child pornography had been sent to Weber on a prior occasion; they had verification that Weber knew the material had been sent; and, because of the "string operation," they knew that Weber had actually ordered the material that formed the basis of the search.
 
 
 59
 In this case, by contrast, there was no evidence outside the two videotapes involved in the controlled delivery to establish that Long fit the "pedophile profile" or, as the affidavit read in this case, that he had "certain proclivities attributed to 'persons having sexual interest in children'." The defendant had no prior connection with child pornography known to the agents. He certainly had no criminal record related to child pornography, to its collection, or to illegal acts with children. There was no "paper trail" as in Weber and the other cases noted above. Indeed, the agents could not even establish that Long himself had placed the order for the two videotapes sent from Amsterdam.
 
 
 60
 Acknowledging that "[i]t is well established that expert opinion may be presented in a search warrant affidavit," the Weber court noted, nevertheless, that "if the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class." Id. at 1345. Despite the fact that the agents' information concerning Weber's proclivities was fuller, certainly, than it was in this case, the Weber court characterized the "expert" testimony in the affidavit as "foundationless." Id. at 1345. Given that, the "expert" opinion offered in this case can only be described as utterly foundationless. As the magistrate judge pointed out in his opinion, Agent Falvey's purported "expertise" in child pornography cases has no factual basis discernable on the face of the affidavit. It reveals only that he had been employed with the U.S. Customs service for six years, but it fails to reveal his involvement in other such investigations. The "expert in the field" on which Falvey relied is not only unnamed, but his credentials and his field of expertise are not identified. Hence, the magistrate judge concluded:
 
 
 61
 In sum, all that Agent Falvey, or anyone else, knew was that two videotapes allegedly depicting minors engaged in sexual activity had been mailed from Amsterdam, addressed to the defendant at his home address. This very limited information is not sufficient, when combined with Agent Falvey's unexplained experience and unidentified information from unnamed experts to satisfy the standards of probable cause even under the most generous reading of the search warrant and affidavit.
 
 
 62
 In ruling on the motion to suppress in this case, the magistrate judge found the Weber decision to be "highly persuasive." I agree, especially in view of its careful review of existing caselaw and its thorough grounding in well-established Fourth Amendment principles. Not the least of these is the constitutional prohibition against general warrants and a concomitant requirement that warrants be narrowly drawn, so as not to exceed the scope of the probable cause to support them. Thus, the Weber court gave appropriate recognition to "the important principle ... that probable cause to believe that some incriminating evidence will be present at a particular place does not necessarily mean there is probable cause to believe that there will be more of the same." Weber, 923 F.2d at 1344 (emphasis in original).
 
 
 63
 Of course, the Weber opinion binds only the Ninth Circuit, and not the Sixth. Hence, we could decide not to follow it. But to attempt to distinguish it, as the majority does in this case, is judicial folly. According to the majority, reliance on Weber is "unavailing" because of a "critical factor" in Weber that is not present in this case, i.e., that in his affidavit the Customs agent implicitly labeled Weber a "pedophile" and a "child pornography collector" and then failed to "demonstrate that the defendant was either a 'pedophile' or a 'child pornography collector'." Here, the majority says, no such "technical terms" were used. Instead, the majority insists, the pertinent allegations in the agent's affidavit were that Long had "a sexual interest in children" and that persons with a sexual interest in children "commonly collect pornographic materials in such places as their homes." This distinction does not hold up on either a legal or a semantical basis, however, because a "pedophile" is, by definition, a "person with a sexual interest in children," and the term "child pornography collectors" would obviously include "persons who commonly collect pornographic materials [depicting children] in their homes."
 
 
 64
 Moreover, I cannot agree with the majority's conclusion that the result in this case is controlled by our prior opinions in United States v. Rey, 923 F.2d 1217 (6th Cir.1991), and United States v. Lawson, 999 F.2d 985 (6th Cir.), cert. denied, 114 S.Ct. 574 (1993). As the district court concluded with regard to the warrant executed at defendant Long's residence:
 
 
 65
 The Government's reliance upon U.S. v. Rey, as explained in U.S. v. Lawson, is misplaced. The quantity of cocaine which was the subject of the controlled delivery in that case was presumptively sufficient to constitute possession for resale. The cocaine was concealed to avoid detection. Thus, the information contained in the affidavit could reasonably lead to the conclusion that the controlled delivery recipient was an experienced trafficker. No such considerations were present in this controlled delivery. We agree with the magistrate judge's finding that the information contained in the affidavit of Agent Falvey provided no substantial basis on which to conclude that anything other than the two tapes would be found in the defendant's home.
 
 
 66
 Both Lawson and Rey involved "controlled delivery of a quantity of drugs presumptively sufficient to constitute possession for resale," Lawson, 999 F.2d at 988, thus providing probable cause to search for items that are routinely used to facilitate drug trafficking. Moreover, in each of these cases "there were additional facts in the magistrate's consideration of the 'totality of the circumstances'." Id. Hence, reliance on Rey and Lawson to uphold the search in this case is, as the district court concluded, wholly unwarranted.
 
 
 67
 "Because the strongest advocates of Fourth Amendment rights are frequently criminals, it is easy to forget that our interpretations of such rights apply to the innocent and the guilty alike." United States v. Sokolow, 490 U.S. 1, 11 (1989) (Marshall, J., dissenting). In this case, respect for Fourth Amendment rights should have alerted Agent Falvey to the need to question--rather than rely upon--his unnamed expert's wholly speculative grounds for a broad search of defendant Long's home. The generalized "pedophile profile," unsupported by any factual tie to the defendant, must be considered "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." For this reason, I conclude (as did the court in Weber ) that reliance on the "good faith exception" in United States v. Leon, 468 U.S. 897 (1984), to validate the search in this case cannot be sustained. Of course, as the magistrate judge pointed out, the additional evidence seized from Long's home would be admissible to impeach his testimony at trial, if, for example, Long denied any connection with the two videotapes from Amsterdam or claimed that their receipt was accidental or unintentional.
 
 
 68
 Because I would restrict the admissibility of the evidence in question to such use, I respectfully dissent from the majority's determination that it was fully admissible.
 
 
 
 *
 Honorable Joseph F. Weis, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 Defendant also consented to the agents retaining possession of approximately 67 other video tapes, seven micro floppy discs, and two strips of film negatives. Whether defendant's consent was valid and whether these items are admissible at trial are not at issue on appeal. See Brief for Defendant-Appellee at 21-22 n. 4
 
 
 [2]
 Contrary to defendant's suggestion, the United States' Notice of Appeal was timely despite being filed 36 days after the district court's order was entered. Pursuant to Federal Rule of Appellate Procedure 4(b), when an appeal by the government is authorized by statute, a point not contested here, the notice of appeal must be filed in the district court within 30 days after the entry of the order by the district court which is being appealed. In calculating the thirty-day period, Fed.R.App.P. 26(a) provides:
 [t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.
 In this case, the district court entered its order on December 16, 1993. Thirty days from that date was January 15, 1994. That day was a Saturday. The following Monday, January 17, 1994, was a legal holiday and the United States has informed us that the district court clerk's office was closed due to weather conditions on January 18, 19, and 20, 1994. On January 21, 1994, the United States filed its Notice of Appeal.
 
 
 [3]
 Although in Rey we mentioned that there were indications of prior illicit activity, we made it clear in Lawson that the evidence of prior illicit activity was not relevant to the holding in Rey. See Lawson, 999 F.2d at 987-88