RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

KENNETH ELBE,

　　　　　　　　　　　　*Defendant-Appellant.*

No. 13-6571

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 4:12-cr-00018-1—Joseph H. McKinley, Jr., Chief District Judge.

Decided and Filed:  November 20, 2014[*]

Before:  McKEAGUE and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.[**]

_____

### COUNSEL

**ON BRIEF:**  Frank W. Heft, Jr., Scott T. Wendelsdorf, OFFICE OF THE FEDERAL DEFENDER, Louisville, Kentucky, for Appellant.  Monica Wheatley, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

### OPINION

_____

　　　McKEAGUE, Circuit Judge.  Someone going by the username "jessiecash" logged onto a peer-to-peer file sharing network from a hotel in South Dakota and shared 16 child pornography

---

[*]This decision was originally issued as an "unpublished decision" filed on November 20, 2014.  The court has now designated the opinion as one recommended for full-text publication.

[**]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

images with an FBI agent. Two months later, agents again noticed jessiecash online from another hotel in Iowa. A simple cross reference of the guest lists resulted in one overlap: "Ken Elbe." Over the next several months, agents monitored jessiecash's online activity and investigated Kenneth Elbe's home in Central City, Kentucky. They applied for and were granted a warrant to search his residence. The search resulted in over 130,000 seized child pornography images and videos. Elbe was charged under the Child Pornography Protection Act, and he filed a motion to suppress the evidence seized. The district court denied the motion and Elbe pleaded guilty to five counts. He now appeals the district court's denial of his motion to suppress the evidence. Because there was sufficient evidence for a magistrate judge to find probable cause, we affirm.

## I.

On November 23, 2010, FBI Special Agent David Fallon logged onto a peer-to-peer network and downloaded 16 child pornography files from username "jessiecash." The user's IP address was traced to a Red Roof Inn in Sioux Falls, South Dakota. On January 18, 2011, Agent Fallon again encountered jessiecash, but Agent Fallon did not find or download any images. This time, the user's IP address was traced to a Motel 60 in Centerville, Iowa. Agent Fallon obtained guest lists from both hotels and "Ken Elbe" was the only overlapping guest. About three months later, on April 26, 2011, jessiecash logged on a third time and the IP address was traced to Heather Leaton's residence in Central City, Kentucky. On this occasion, Agent Fallon did not find or download any images, but jessiecash was sharing a text file, stating, "my preference, girls only! I try to have for all users. Guys—if no girlie and all boy pics—then jump off my list." R. 25-2 at 14. Agents searched public records and found that Elbe and Leaton had previously shared an address in Austin, Pennsylvania and that utility company records for the Central City residence were in Elbe's name. On June 14, 2011, Special Agent David McClelland drove by the residence in Central City and recognized a person matching Elbe's driver's license photograph sitting on the porch using a laptop computer. Also on the porch, Agent McClelland observed a twelve-year-old child, a stroller, and children's toys.

Agent McClelland obtained a search warrant on June 27, 2011, for the Central City residence. The affidavit alleged violations of 18 U.S.C § 2252A and included a background on

child pornography and how computers have "revolutionized the manner in which child pornography is produced and distributed." R. 25-2 at 7. It outlined the agents' factual observations of Elbe over the last several months. And finally, the affidavit described characteristics common to individuals involved in child pornography. It is common, the affidavit stated, for individuals interested in child pornography to keep hard copies in their homes and close by, to maintain copies for several years, and to keep correspondence lists.

The magistrate judge granted the warrant and agents conducted the search on June 29, 2011. They removed from the residence computers, hard drives, photographs, undeveloped film, and CDs. Agents seized 130,000 child pornography images and videos, including 126,106 known images and 2,407 known videos.

A grand jury indicted Elbe on five counts of child pornography offenses, and he filed an unsuccessful motion to suppress the evidence. Elbe reserved the right to appeal the denial of his motion and pleaded guilty to one count of using a facility in interstate commerce to transmit a notice offering to receive, exchange, buy, produce, display, distribute and reproduce a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(d)(1)(A); and four counts of knowingly receiving child pornography that had been transported in interstate commerce by means including a computer, violations of 18 U.S.C. § 2252(a)(2)(B). He was sentenced to 180 months' imprisonment.

Elbe appeals the district court's denial of his motion to suppress, claiming that probable cause was lacking because the affidavit used boilerplate language, it did not establish a nexus between the place to be searched and the evidence sought, and the information was stale. He also argues that the good faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 922 (1984), does not apply.

II.

Probable cause justifying the issuance of a search warrant is established if the affidavit contains "particularized facts demonstrating 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). We

"give great deference to a magistrate judge's probable cause determination and reverse that decision only if it was arbitrarily made." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009) (citing *United States v. Terry*, 522 F.3d 645, 647–48 (6th Cir. 2008); *see also Frazier*, 423 F.3d at 531). Whether this standard is met "depends on the totality of the circumstances," including "factual and practical considerations of everyday life." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (internal quotation marks and citations omitted).

The search warrant affidavit must establish a nexus between the place to be searched and the evidence sought. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). Stale information may not be used as a basis for probable cause. *Frechette*, 583 F.3d at 377–78 (citing *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). Whether the information is stale depends on the "inherent nature of the crime." *Spikes*, 158 F.3d at 923.

A.

First, Elbe objects to the affidavit's use of boilerplate language describing characteristics common to individuals involved with child pornography and the impact of computers on child pornography. Boilerplate language, he claims, does not constitute "particularized facts" required by *McPhearson*, 469 F.3d at 524. But we have approved of the use of boilerplate language so long as the information contained in the affidavit provided sufficient probable cause. *See United States v. Hampton*, 504 F. App'x 402, 405 (6th Cir. 2012) (per curiam); *United States v. Long*, No. 94-5117, 1994 WL 669538 (6th Cir. Nov. 29, 1994). This approach is consistent with other circuits. *See United States v. Clark*, 668 F.3d 934, 939 (7th Cir. 2012) ("Boilerplate language about the tendencies of child pornography collectors supports probable cause for a search when the affidavit also includes facts that suggest the target of the search has the characteristics of a prototypical child pornography collector.") (internal quotation marks and citations omitted); *United States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010) (same); *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (en banc) (same).

In addition to boilerplate language regarding the characteristics of those interested in child pornography, the affidavit had plenty of details. It included evidence of (1) jessiecash sharing child pornography images from a hotel in South Dakota on November 23, 2010, and a confirmation from the hotel manager that Elbe used the hotel's internet services that day;

(2) observations of jessiecash logged onto the network, but not sharing, at another hotel on January 18, 2011; (3) guest lists from both hotels confirming that Elbe was the only overlapping guest; (4) observations of jessiecash logged on and sharing a text file regarding his picture preferences from an IP address traced to one of Elbe's associates in Central City, Kentucky on April 26, 2011; and (5) physical observations of Elbe with a laptop on the porch of the residence in Central City on June 14, 2011. The information in the affidavit, including the facts and observations of the agents and information regarding the characteristics of individuals interested in child pornography, provided sufficient probable cause to believe that Elbe had violated § 2252A. *See United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) ("[E]vidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material.").

B.

Next, Elbe makes a nexus argument. There must be a "'nexus between the place to be searched and the evidence sought.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). That nexus can be inferred from "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (internal quotation marks and citations omitted). Elbe argues that the affidavit does not establish a nexus between the residence in Central City and his computer usage. He claims that the only information in the affidavit connecting the residence to illegal activity was Agent Fallon's November 23, 2010 observations, which took place seven months before the search warrant and over 850 miles away from Central City.

Elbe's arguments fail. We have held in the context of child pornography that an affidavit including both information connecting the defendant to the offending username and information about where the defendant lived established probable cause to search the defendant's residence. *United States v. Lapsins*, 570 F.3d 758, 766 (6th Cir. 2009). This inference is permitted in the child pornography context, we have explained, because these crimes are committed in a private place with high-speed Internet. *Id.* (citing *Wagers*, 452 F.3d at 540). The agents established that

Elbe's jessiecash account was associated with his residence. They did so by tying jessiecash to Elbe with evidence of IP addresses from two hotels. And a few months later, agents tied jessiecash to a residence in Central City with high-speed Internet, where agents observed Elbe, and where Elbe paid utility bills. That is a sufficient nexus.

Elbe's reliance on *United States v. Green*, 634 F.2d 222 (5th Cir. 1981), does not change this conclusion. In that case, involving a firearm conviction, the affidavit alleged criminal activity in California, and the magistrate judge granted a search warrant on defendant's Florida residence without evidence to connect the two locations. *Id.* at 226. But here, there is sufficient evidence tying the activity at the Red Roof Inn in South Dakota with his username and with his residence in Central City. This evidence, combined with the nature of the crime, established a nexus.

C.

Finally, Elbe argues that the information in the affidavit was stale. The point of the expiration of probable cause is determined by the nature of the crime and the circumstances of that case. *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010). Rather than focusing on the timeline of the evidence, we look to four factors to measure staleness:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Frechette*, 583 F.3d at 378 (quoting *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006)).

Under these factors, the information in the affidavit was not stale. For the first factor, we have held that "child pornography is not a fleeting crime" and it is a crime that is "generally carried out in the secrecy of the home and over a long period." *Id.* As a result, the time limitations applied to more fleeting crimes do not control. *Id.* With child pornography, as recognized in the search warrant affidavit here, agents can recover erased, hidden, or encrypted files from hard drives. *Terry*, 522 F.3d at 650 n.2; *see also Lewis*, 605 F.3d at 402. Our "relaxed

approach" towards these temporal requirements in child pornography cases comports with the practice of other circuits. *See United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (citing cases).

For the second factor, the defendant may be considered nomadic when the person moves "from place to place, so as to decrease the probability of finding evidence at a given location." *Abboud*, 438 F.3d at 573. Here, Elbe was entrenched. He lived in the Central City residence where he paid utilities. The fact that he logged onto the peer-to-peer network from hotels on two occasions does not constitute moving "from place to place."

For the third factor, child pornography has a potentially infinite life span because files "can be easily duplicated and kept indefinitely even if they are sold or traded." *Frechette*, 583 F.3d at 379. And, as the search warrant recognized, child pornography can be uncovered on a hard drive even if those images have been deleted. *Terry*, 522 F.3d at 650 n.2.

Finally, for the fourth factor, the place to be searched in this case was Elbe's residence, a "secure operational base." *See Frechette*, 583 F.3d at 379; *Paull*, 551 F.3d at 522 ("[T]he crime [of child pornography] is generally carried out in the secrecy of the home and over a long period."). Given the nature of child pornography, the evidence of ongoing criminal activity, and our precedent upholding similar delays, the information in the affidavit was not stale. *See Paull*, 551 F.3d at 522 (thirteen months); *Lewis*, 605 F.3d at 402 (seven months); *Lapsins*, 570 F.3d at 767 (nine months); *Frechette*, 583 F.3d at 378–79 (sixteen months).

Elbe asks us to reconsider *Frechette*. He claims that applying the four factors in the child pornography context renders the staleness determination obsolete because it alters the usual temporal requirements and because the defendant, committing the crime from a permanent or semi-permanent residence, is always entrenched. A panel of this court may not overturn binding precedent because a published prior panel decision "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Thus, we cannot overrule *Frechette*.

III.

The information set forth in the affidavit was sufficient for a magistrate judge to find probable cause. The affidavit included particularized facts and it established a nexus between the place to be searched and the evidence sought. And the information was not stale. Because we find there was sufficient probable cause, it is not necessary to address the good faith exception. For these reasons, we affirm.