**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael L. GREEN,**
**Defendant–Appellant.**

No. 80–5148.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 12, 1981.

Joseph Milchen, San Diego, Cal., for defendant–appellant.

Grubert Roger Markley, Atty., Dept. of Justice, Washington, D. C., for plaintiff–appellee.

Before GEWIN, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Defendant Green was convicted on five counts of possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1). He appeals, urging that the evidence was insufficient to sustain his conviction and that evidence of prior misconduct was improperly admitted at trial. For reasons explained below, we find no merit to these contentions. Defendant also raises several Fourth Amendment issues, the thrust of which is that the trial court erred in denying his pre–trial motion to suppress evidence, namely, the firearms, seized pursuant to an allegedly deficient search warrant.[1] Defendant Green contends that the affidavits supporting the search warrant did not set forth sufficient underlying circumstances to enable the magistrate to independently judge the validity of the infor-

mant's conclusion. Green also argues that the affidavits did not establish probable cause for issuance of the warrant. Assuming without deciding that the affidavits were sufficient to establish reliability of the informant, *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), we conclude that the affidavits did not reveal probable cause to issue the warrant.

Defendant's non–constitutional grounds can be disposed of easily. Concerning the sufficiency of the evidence issue, defendant contends that the Government did not prove dominion and control sufficient to prove possession. But the Government introduced evidence that the firearms were seized at the Greens' residence, in a bedroom containing men's clothing and a book bearing defendant's fingerprints. Viewing the evidence in the light most favorable to the Government, *see, e. g., Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and making all credibility choices and inferences in support of the jury's verdict, *see, e. g., United States v. Black,* 497 F.2d 1039 (5th Cir. 1974), we conclude that the evidence presented at trial was sufficient to support the jury verdict.

Also without merit is the contention that the district court erroneously admitted evidence of uncharged alleged prior misconduct by allowing a Government witness to testify that defendant received firearms from the witness more than six months before the charged possessory offense.[2] But defendant's knowledge and intent were in issue; the Government was therefore justified in presenting evidence of prior similar misconduct. *See United States v. Webb,* 625 F.2d 709 (5th Cir. 1980); *United States v. King,* 505 F.2d 602 (5th Cir. 1974);

1. The constitutional issues are whether the search warrant was based on probable cause, whether the search exceeded the scope of the warrant, and whether an evidentiary hearing should have been held to test the veracity of the search warrant affidavits.

2. This evidence was admitted to prove Count VI of the indictment charging the receipt of firearms that had traveled interstate. *See* 18 U.S.C.A. § 922(h). This Count was later dismissed.

Fed.R.Evid. 404(b). The evidence was properly admitted for consideration on all counts of the indictment.

The Fourth Amendment issues are more bothersome. The facts tending to establish the grounds for issuance of the search warrant were contained in two affidavits; these affidavits reveal ample circumstances from which a magistrate could conclude that defendant Green and his wife, Judith Green, were engaged in a wide variety of criminal activities in California, including conspiracies to obstruct justice, to suborn perjury, and to violate citizens' civil rights. The affidavits described meetings and transactions in California between defendant Green, Judith Green, and an informant named Richard Shepard. Shepard relayed information that the Greens employed him to "plant" LSD in a San Diego laboratory in an attempt to impute criminal activity to supposedly innocent persons.[3] During one of the meetings the Greens discussed with Shepard where they would obtain the LSD. Shepard asked about the LSD that Judith Green had in a safety deposit box in Key West, Florida; without acknowledging the possession of LSD in any location, the Greens told Shepard to secure some liquid LSD.

The affidavits further attest to the existence and substance of several telephone conversations between Shepard and the Greens, many of which were taped by Shepard. After listening to the tape of one conversation that was probative of criminal activity, the affiant, an experienced law enforcement officer, concluded that the Greens were also taping the conversation. The location at which the conversations took place was not specified.

Finally, the affidavits disclosed that Shepard had admitted stealing a microscope from the University of California, Berkeley campus, removing all identifying numbers from the microscope, and giving it to Judith Green. Berkeley Police Department records verified the theft. Shepard further told the affiant that he believed the microscope was at the Greens' Key West, Florida, residence; no basis for Shepard's belief was given.

The warrant specified the object of the search to be:

tape recordings and recording devices; notes and memoranda regarding conversations, meetings, telephone numbers, discussions and plans with Richard Shepard, Sharon Shepard, Michael Lewis Green, Judy Green, Edward Daley and Joe Carroll; financial records and correspondence regarding the retention of Louis Rimbach and Richard Shepard for services rendered; notes, plans and memoranda concerning LSD, drugs, drug precursors, chemical formulas and laboratory equipment; telephone bills, toll records and payment records for telephone services, money orders and telegrams; letters, memoranda and agreements concerning plea bargains and dismissals in cases involving Richard Shepard, Michael Green and Judy Green; notes, memoranda and records concerning conversations about "dirty dishes", "clear liquid", "liquid acid", PCP and other controlled substances; a tape recording made about February 16, 1978, by Richard Shepard and memoranda, receipts, correspondence, records, contracts and vouchers regarding the payment of money to Richard Shepard, Bruce Hochman, Les Osborne, E. Mac Amos for services rendered; safety deposit box keys and records; bank records, checks, passbook accounts, statements, etc.; travel plans, notes, records, bills, etc.; foreign bank records, documents, certificates, records, passbooks, etc.; original of a list of chemicals sup-

---

**3.** The Greens had been indicated in California for conspiracy to manufacture and distribute LSD. To obtain dismissal of the charges, the Greens agreed to provide information concerning a supposedly illicit drug laboratory. The Greens employed Shepard to obtain the needed information; when Shepard's efforts proved fruitless, the Greens allegedly instructed Shepard to "plant" LSD in the laboratory.

plied to Richard Shepard and all copies; stolen property specifically a Toyota microscope with serial numbers and identifying marks removed; a key or keys to the Technician Company; rental and lease agreements or documents for housing, shops, warehouses, and equipment; personal telephone directories and address books, etc., *which are* : fruits and instrumentalities and evidence of the crimes of: (1) conspiracy to obstruct justice; (2) conspiracy to suborn perjury; (3) conspiracy to possess controlled substance with intent to distribute and (4) conspiracy to violate a citizen's civil rights; in violation of Title 18, U.S.C. §§ 371, 1503, 1622 and 241; Title 21, U.S.C. §§ 841 and 846.

The warrant was executed, and five firearms were seized.[4] In addition, law enforcement officers seized approximately 200 pounds of miscellaneous matter, including a brochure entitled "How to Get a Good Suntan"; an eyeglass screw–driver repair kit, certificates of rabies vaccinations for·a dog, a pamphlet of Rules of Conduct for Parents (Mary Immaculate High School), rules for backgammon, a "First Seven Years" baby book, and seven birthday greeting cards. None of the material seized was probative of the Green's allegedly criminal conduct in California.

Prior to trial defendant Green moved for the suppression of all evidence seized in the search, and the district court denied the motion.[5] A trial by jury resulted in convictions on five counts of possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1).[6]

When considering the issuance of a search warrant, a magistrate must exercise common–sense judgment as to whether the facts attested to in the supporting affidavits establish probable cause. *Bastida v. Henderson*, 487 F.2d 860 (5th Cir. 1973). The affidavits need not establish beyond a reasonable doubt that the objects sought will be found at the place sought to be searched; it is sufficient that the facts described in the affidavits warrant a reasonable person to believe that the objects sought would be found. *United States v. Maestas*, 546 F.2d 1177 (5th Cir. 1977); *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975). Moreover, while it is better for the affidavits to contain information that the objects sought are on the premises to be searched, it is not always necessary. "[E]vidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." *Maestas, supra*, 546 F.2d at 1180. In marginal cases or in the absence of arbitrariness a magistrate's finding of probable cause should be upheld. *Id.; Bastida, supra*, 487 F.2d at 863; *Castle v. United States*, 287 F.2d 657 (5th Cir.), *vacated for resentencing*, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75 (1961).

A careful review of the affidavits reveals ample evidence from which the magistrate could conclude that Green was engaged in criminal activity in California. But no evidence, other than residence, was set forth in the affidavits that connected

---

4.  Firearms were not specified in the warrant as objects sought; however, if the search itself had been constitutional, the seizure of the firearms would have been permissible under the plain view doctrine. *See e. g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

5.  In explaining its decision, the district court wrote:

     According to the transcripts, defendants admitted to the informant that there were drugs kept at the Key West residence. Furthermore, the agents submitting the application independently came to the conclusion that tapes of conversations between the infor-

mant and the defendants were being made at the Key West number. These asserted facts provided ample grounds for the magistrate's conclusion that incriminating evidence could be found in a search of the Florida residence. As discussed below, the affidavits do not support the district court's conclusions.

6.  Although Green was convicted on five counts for the simultaneous possession of five firearms, the Government agrees on appeal that simultaneous possession of several firearms received at the same time constitutes only one offense under 18 U.S.C.App. § 1202. *See United States v. Causey*, 609 F.2d 777 (5th Cir. 1980).

the Key West, Florida, home to the criminal activity taking place almost 3,000 miles away.[7] The question thus becomes whether evidence that a person is engaged in criminal conduct in California constitutes probable cause, in and of itself, to search that person's Florida residence.

The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime. But we are confronted with a different situation: in this case defendant Green allegedly engaged in criminal activity several thousand miles from his residence. The convenience of the residence for use as a place to plan and hide fruits of the crime is thus diminished, if not eliminated. Assuming, as the affidavits indicate, that all criminal activity took place in California, we find no justification for a reasonable person to conclude that there was probable cause to believe that fruits or instrumentalities of crimes could be found at the Florida residence.[8] The motion to suppress should have been granted.

Because we reverse on this aspect, we do not consider the other constitutional issues.

REVERSED and REMANDED.

7. The Government contends that the Greens and informant Shepard discussed that LSD was kept in the Key West residence. The affidavits, however, reveal only that Shepard asked about LSD in a safety deposit box in Key West and that the Greens told him to obtain LSD from other sources. Nothing in the affidavits indicated that the Greens had stored drugs in Key West. The Government also contends that its agents independently came to the conclusion that tapes of telephone conversations between Shepard and the Greens concerning criminal activity were being made at the Key West number. In fact, the affidavits reveal that an agent suspected that a tape of one conversation was being made, but the source of this conversation was not specified. Another agent suspected

that a tape of a conversation between Shepard and defendant Green was being made; although the affidavit revealed that Green was communicating from a telephone at the Key West residence, it does not disclose that the conversation concerned criminal activities. In short, contrary to the Government's allegations on appeal, the affidavits did not connect the criminal activity in California to the residence in Florida.

8. We emphasize that the affidavits contain no allegations tending to establish that criminal activity of any kind was taking place at the Florida residence.