**UNITED STATES of America**

v.

**Timothy Michael GEREB.**

**Crim. No. SA–07–CR–365(4).**

United States District Court,
W.D. Texas,
San Antonio Division.

Feb. 4, 2008.

Bill Baumann, U.S. Attorney's Office, San Antonio, TX, for United States of America.

Alan Brown, Attorney at Law, San Antonio, TX, for Timothy Michael Gereb.

### AMENDED ORDER

XAVIER RODRIGUEZ, District Judge.

On January 3 and January 28, 2008, evidentiary hearings were held regarding Defendant's motion to suppress (docket no. 151).

### Background

Defendant and four others are charged in an indictment with conspiracy to transport aliens (Count 1), conspiracy to harbor aliens (Count 2), and aiding and abetting a minor to engage in a commercial sex act and knowing that force, fraud and coercion would be used in violation of 18 U.S.C. §§ 2 and 1591(a) (Counts 3, 4 and 5).

During the late hours of June 14, 2007, U.S. Immigration and Customs Enforcement (ICE) Agent Joe N. Benavides completed an affidavit in support of a search of 5231 Casbury Street, San Antonio, Texas. The affidavit stated in relevant part, as follows: ICE was investigating an alien smuggling and human trafficking allegation. On May 24, 2007, ICE agents con-

ducted a "knock and talk" at 10706 Grand Haven, San Antonio, Texas and two female aliens were found. Receipts related to child sex trafficking were found in a red Ford Taurus truck located at 10706 Grand Haven. The two female aliens were interviewed and stated that they were brought into the United States to work as "escorts," but were told they were not required to have sex with any clients. After being transported to San Antonio, they were told that they would have to have sexual relations with clients and were being "watched over" by Maria de Jesus Ochoa [a co-Defendant in this case]. They stated that they had being taken to an apartment in San Antonio, and while in the apartment they were required to disrobe and were touched and "examined" by two men. They also stated that Gereb [known to the women at the time as Tims] placed a handgun on a table and told them if they would try to leave they would be killed. One of the women also stated to investigators that they had been taken to a house [no location given] in San Antonio and an office complex at 6391 DeZavala, suites 221 and 104B, which they were required to clean and that at these offices they were going to be giving "massages." The affidavit stated that ICE determined that one of the men was Defendant Gereb and that he lived at 5231 Casbury. The affidavit further stated that Gereb was a registered director of the business located at 6391 DeZavala. The affidavit also stated that Gereb was arrested on June 14, 2007 at his home, 5231 Casbury. The affiant then opined that "based on [his] training and experience, and the facts of this case, [he] believed that those persons in charge of the office premises at both 6391 DeZavala, Suite 221 and Suite 104B would routinely keep records of payment, monies owed, expenses, addresses and information about respondents, business related expenses, and other evidence as it relates to this case. This evidence may be kept in a variety of media, including paper and electronic/computer files." The affiant also stated that based on his training, education, experience and discussions with other federal agents, he knew that undocumented aliens often possess documents indicating their nationality or identification and that persons who traffic in undocumented aliens often retain and secret these documents to maintain control over the aliens. The affiant further stated that alien smugglers routinely keep records of payments, monies owed, expenses and addresses. The affiant further stated that individuals bringing in aliens for purposes of prostitution keep additional records regarding the monies owed from the prostitution activities, the movement of prostitutes and prostitution-related expenses. The affiant concluded that based on the above and his experience and training, it was his belief that individuals engaged in this type of criminal activity would keep evidence at their residence, storage facility or safety deposit box and there was probable cause to believe that evidence would be found at 5231 Casbury. The affiant concluded that it was necessary to execute the warrant during the night to preserve evidence. The affidavit was nine pages in length.

A United State Magistrate Judge signed and issued the search warrant on June 15, 2007 at 12:07 a.m. The search warrant authorized the search of 5231 Casbury and "any appurtenances, including, but not limited to the garage, storage shed, vehicles, or garbage cans on the described property." The warrant authorized the search and seizure of written records indicating who occupied 5231 Casbury, computers and computer-related equipment, written or electronic correspondence relating to sex trafficking of children, written or electronic correspondence relating to travel for

the purpose of engaging in sexual activities with minors, books, ledgers or other records relating to sex trafficking of children, addresses, diaries or listing of names associated with the sex trafficking of children, and photographs related to the sex trafficking of children. The Magistrate Judge found reasonable cause had been established to serve the warrant and search "at any time in the day or night."

Also on June 15, the Government secured a search warrant to search 230 Dwyer # 503 [a condominium owned by co-Defendant Stephens] from the same Magistrate Judge. The Dwyer affidavit possessed information not stated in the Casbury affidavit. In specific, the Dwyer affidavit detailed that Stephens had two listed addresses (1020 Kampman Blvd. Apt. # 3 and 230 Dwyer # 503). The Dwyer affidavit also stated that sources had informed the agents that Stephens did "evil things" at the Kampman apartment. Defendant argues that the agent intentionally or negligently omitted this information from the Casbury affidavit and thereby misled the Magistrate Judge to believe that probable cause existed to believe that criminal activity may have actually taken place at the Casbury address.

Defendant also argues that the Casbury affidavit fails to establish the necessary nexus between the place to be search and the items to be seized. Phrased differently, Defendant argues that the women stated to agents that they had been taken to certain apartments and office suites, but they never stated that they had been taken to any home resembling the Casbury residence. Defendant also argues that the women never informed agents that any of their identification documents or other such items were being held by any of the co-defendants. Accordingly, Defendant complains that his home was searched merely because he was suspected of a crime that allegedly took place at other locations, and there was no probable cause to believe that criminal activity took place at his residence or that any evidence of criminal activity could reasonably be expected to be found there.

Defendant also argues that the handgun was wrongfully seized from a safe inside the Casbury home because the search warrant did not authorize the search or seizure of any handgun.

Defendant further argues that his white Cadillac Escalade was wrongfully searched and items found there wrongfully seized because it was parked on a city street and not within the Casbury property. The search warrant never specifically authorized the search of a white Escalade that may be found nearby. He also argues that the women never identified any white Escalade as a vehicle they had been transported in or seen. He also argues that the vehicle was searched more than 12 hours after he had already been arrested.

In addition, Defendant argues that the search warrant was invalid because the affidavit in support of the warrant was conclusory and a "bare bones" affidavit.

Finally, Defendant argues that the affidavit fails to set forth any facts to establish good cause for a nighttime search in violation of Fed.R.Crim.P. 41(e)(2)(A)(ii).

## ANALYSIS

A. The agent did not intentionally or negligently omit information from the Casbury affidavit. Probable cause existed for the search of the Casbury residence.

"A valid search warrant may be issued only upon a finding of probable cause. The information necessary to show probable cause must be contained within a written affidavit given under oath. It is clear that probable cause does not require proof

beyond a reasonable doubt; 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). A magistrate's determination is entitled to great deference by reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236 n. 10, 103 S.Ct. 2317, 2331 n. 10, 76 L.Ed.2d 527 (1983). A magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)." *U.S. v. Brown*, 941 F.2d 1300 (5th Cir.1991).

Probable cause "is that which warrants a man of reasonable caution in believing that there is a 'practical, non-technical' probability that contraband is present on the premises to be searched; it does not demand a showing that the belief is more likely true than false." *U.S. v. Adcock*, 756 F.2d 346, 347 (5th Cir.1985).

An affidavit "must establish a nexus between the house to be searched and the evidence sought. *See United States v. Freeman*, 685 F.2d 942, 949 (5th Cir.1982). That nexus may be established, however, by direct observation or through normal inferences as to where the articles sought would be located." *U.S. v. Broussard*, 80 F.3d 1025, 1034 (5th Cir.1996).

■ The Court rejects Defendant's argument that the agent either negligently or intentionally omitted information in the Casbury affidavit. The agent was not trying to establish to the Magistrate Judge that any criminal activity had taken place at the Casbury residence. The agent was merely seeking written or electronic evidence of the alleged alien smuggling and sex trafficking activity. The affidavit established probable cause that illegal activity had taken place and that Defendant was a participant in the alleged activity. Based

on their probable cause to believe that Gereb was a participant, the agent believed based upon his and ICE's collective training and experience that evidence of the illegal activities could be found at Gereb's residence. The question becomes can a law enforcement agency search a suspect's house for documentary and electronic evidence considering the facts of this case?

In *U.S. v. Freeman*, 685 F.2d 942 (5th Cir.1982), the Court stated: "the fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime. If that were so, there would be no reason to distinguish search warrants from arrest warrants.... We have consistently held that facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought. However, that nexus may be established either through direct observation or through normal inferences as to where the articles sought would be located." *Id.* at 949 (citations omitted). The Court further stated: "The affidavit need not contain information providing certainty that the objects sought will be found as a result of the search. It is only necessary that 'the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located' at the place where it was proposed to search. For instance, evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." *Id.* (citations omitted).

In *Freeman*, the Defendant was a suspect in a drug smuggling operation. The defendant argued in his motion to suppress that the alleged drug smuggling operations took place in San Francisco and

Dallas, and that nothing in the affidavit indicated his Stinson Beach residence as a likely spot for him to have kept drugs, identification, and the business records sought. Although Freeman is summarily condensed for the proposition that no nexus had been established between the drug smuggling allegations and the residence, a careful read of the case indicates that the Fifth Circuit went at length to discuss other search warrants also issued and never directly held that there was an absence of a nexus. Nevertheless for a variety of other issues, portions of the warrant were held invalid.

In *U.S. v. Laury*, 985 F.2d 1293 (5th Cir.1993), the Court acknowledged that in a bank robbery case it would be expected that evidence of stolen material would be found at a suspect's residence. Likewise, in child sex exploitation cases, the Court held it is reasonable to assume that evidence may be found at a suspect's home. *U.S. v. Payne*, 341 F.3d 393 (5th Cir.2003). However, drug smuggling cases have generally found additional evidence such as bags being seen taken inside of a residence after a suspected delivery. *See e.g., U.S. v. Broussard*, 80 F.3d 1025 (5th Cir.1996). General statements found in some Fifth Circuit authority, however, do not provide clear guidance. In *U.S. v. Green*, 634 F.2d 222 (5th Cir.1981) the Court stated: "The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *Id.* at 226. The Court agreed that the motion to suppress the search of the residence should have been granted but only because in that case

"defendant Green allegedly engaged in criminal activity several thousand miles from his residence. The convenience of the residence for use as a place to plan and hide fruits of the crime is thus diminished, if not eliminated. Assuming, as the affidavits indicate, that all criminal activity took place in California, we find no justification for a reasonable person to conclude that there was probable cause to believe that fruits or instrumentalities of crimes could be found at the Florida residence." *Id.*

In this case Gereb is alleged to have been part of a conspiracy to smuggle aliens and use them as prostitutes or escorts in San Antonio. It is undisputed that his Casbury residence is located in San Antonio.

*U.S. v. Maestas*, 546 F.2d 1177 (5th Cir. 1977) appears to be the most analogous case to the facts at hand. In *Maestas*, the defendant was a suspect in a large-scale interstate counterfeiting ring. The Court held "Defendant's apartment was the only logical place to conduct the search for the counterfeiting paraphernalia. Mail is one of those items that people normally receive and keep at their places of residence. The Cook County Sheriff's office is a reliable source that defendant was receiving counterfeit checks and identification in Denver, under the name of Dee Lewis. Therefore, the affidavit contained ample information from which a reasonable and disinterested magistrate could have concluded that counterfeiting paraphernalia were on the premises sought to be searched." *Id.* at 1180.

In this case the agent prepared a nine page affidavit (three pages discussed the facts of this case at length). The affidavit described in detail the alleged alien smuggling and sex trafficking allegations, identified Gereb as a participant in the alleged activity, and stated that one of the other co-defendants had been keeping receipts

relating to the expenses she had incurred during her participation in the alleged activity. The affidavit stated that the Government believed that Gereb was keeping written or electronic evidence regarding the activities at his home. With regard to Defendant's argument that there was no evidence that any of the co-defendants were keeping the women's identification cards, Defendant's Exhibit E clearly indicates that one of the women entered the United States using a laser border crossing visa. Another document in Exhibit E indicates that when the women were found they had no identification documents and that the women believed they were being kept at some other location (Pearsall, Texas). The Court finds that there was a "practical, non-technical" probability that documentary or electronic evidence of crimes could be found at Gereb's residence.

### B. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 104 S.Ct. 3405 (1984)

 Under the good-faith exception established in *Leon,* "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *See Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405. Where a warrant is supported by more than a bare bones affidavit, an officer may rely in good faith on the warrant's validity. *Laury,* 985 F.2d at 1311. As noted above, the Court finds that that the affidavit was not a bare bones affidavit. Also, as stated above, the Court finds that that the affidavit was not totally lacking in indicia of probable cause. None of the four exceptions to the *Leon* test are applicable here. Accordingly, the agents executing the warrant had a good-faith reliance on the warrant's validity.

### C. Weapon seizure

 Defendant argues that the search warrant did not authorize for the search of weapons. The handgun was found in a safe inside the Gereb residence. While executing the warrant in search of documentary evidence, the agents found the gun in the safe. A handgun was allegedly used by Gereb in threatening the women. "Generally only items described in a search warrant may be seized. An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine." *U.S. v. Bills,* 555 F.2d 1250, 1251 (5th Cir.1977). *See also U.S. v. Nedd,* 582 F.2d 965, 966 (5th Cir.1978) (pistol is admissible under the plain view doctrine when discovered in a place where the police could properly be looking in execution of the warrant). The handgun in this case was properly seized.

### D. Night-time search

 Defendant argues that the affidavit fails to set forth any facts to establish good cause for a nighttime search in violation of Fed.R.Crim.P. 41(e)(2)(A)(ii). The affiant stated that it was necessary to execute the warrant during the night to preserve evidence. The Magistrate Judge found reasonable cause had been established to serve the warrant and search "at any time in the day or night." Defendant argues that he had already been arrested earlier in the day and law enforcement authorities did not seek any evidence at that time. The Government argues that it should not be penalized for seeking a warrant from a Magistrate Judge rather than conducting a warrantless search. A magistrate's determination of reasonable cause is entitled to

great deference by reviewing courts. The Government could still reasonably believe that Gereb's friends or family members might attempt to destroy or conceal any evidence located in the home. Even assuming arguendo that the Magistrate Judge was incorrect in authorizing a nighttime search, the Fifth Circuit has concluded that a Rule 41 violation alone does not trigger the derivative evidence rule and suppression of the evidence. *U.S. v. Tedford,* 875 F.2d 446, 451 (5th Cir.1989).

### E. Vehicle search

Defendant argues that his white Cadillac Escalade was wrongfully searched and items found there wrongfully seized because it was parked on a city street and not within the Casbury property. The search warrant never specifically authorized the search of a white Escalade that may be found nearby, but did authorize the searches of vehicles. Defendant argues that the women never identified any white Escalade as a vehicle they had been transported in or seen. He also argues that the vehicle was searched more than 12 hours after he had already been arrested.

■ The Government argues that earlier in the day Gereb was arrested while he was loading items into his white Escalade parked on the street in front of his home. The Government does not argue that the vehicle was used in any criminal activity. The Government only argues that the vehicle was also another area where documentary evidence could have been found. The Government initially argued that when the search warrant was executed some 12 hours later, agents saw a binder in the back seat that was plainly visible. During the second evidentiary hearing, Special Agent Lambeth testified that sometime after the search of the house, agents were gathered in front of the house and someone asked whether the Escalade had been searched. When it became apparent to them that the vehicle had not been searched, someone asked Mrs. Gereb for the keys. Special Agent Lambeth testified that he had no knowledge of any agent seeing any item in the car prior to its search. Given this testimony (and no other evidence proffered from the Government), the "plain view" exception earlier advanced by the Government is not applicable.[1]

The Government also argues that the "automobile exception" allowed for the warrantless search of the vehicle and seizure of the notebook/binder found inside.

The Supreme Court has held that the automobile exception to the warrant requirement applies when a vehicle is "readily capable" of "being used on the highways" and it "is found stationary in a place not regularly used for residential purposes...." *California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Under these circumstances "overriding societal interests in effective law enforcement justify an immediate warrantless search because (1) 'the vehicle is obviously readily mobile by the turn of an ignition key ...' and (2) it is subject to a 'reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling.'" *U.S. v. Sinisterra,* 77 F.3d 101, 104 (5th Cir.1996). In this case the vehicle was parked in front of Defendant's residence on a public street.

---

1. The "plain view" exception allows officers to seize evidence in plain view if they are lawfully in the position from which they view the evidence, the incriminating nature of the evidence is immediately apparent, and the officers have a lawful right of access to the evidence. *United States v. Munoz,* 150 F.3d 401, 411 (5th Cir.1998).

Although the vehicle was parked in front of a residence, the Government argues the "automobile exception" should still apply because to deny this exception would lead to a "perverse result." The Government argues that if the vehicle was parked in the driveway, the search warrant would have allowed for a search. Providing the car protection merely because it was parked in front of the home on the public street would result in a "car parked further from a residence enjoying more Fourth Amendment protection" and is "patently unreasonable." In support of its position, the Government relies upon *U.S. v. Smith*, 510 F.3d 641 (6th Cir.2007) and *U.S. v. Patterson*, 150 F.3d 382 (4th Cir. 1998).

In *Smith*, the Pontiac in question was seen on the premises to be searched prior to a magistrate signing the search warrant. When the search warrant was executed, the Pontiac was parked on the street. The district court found that the search of the Pontiac was outside the scope of the search warrant. Nonetheless, the district court determined that the warrantless search of the vehicle was valid pursuant to both the automobile exception and the inventory exception to the warrant requirement.[2] The Sixth Circuit concluded that, given the totality of the circumstances, officers had probable cause to search the Pontiac pursuant to the auto-

mobile exception to the warrant requirement. *Id.* at 650.

In *Patterson*, a co-participant in a bank robbery told law enforcement officers that the defendant used a certain vehicle in the commission of the crime. The Fourth Circuit held that there was probable cause to seize Patterson's Honda based on the co-participant's statement that Patterson participated in the robbery with him and that the two of them used Patterson's vehicle as transportation during the robbery.

■ In this case, this Court has held that probable cause existed for the search of the Casbury residence and the magistrate judge properly issued a warrant. If the Escalade was on the premises it could have been searched. Because it was not, independent probable cause for the search of the Escalade is needed, but has not been shown. Alternatively, the agents could have secured an additional warrant for its search. The agents did not do so.

Alternatively, the Government citing *U.S. v. Patterson*, 278 F.3d 315 (4th Cir. 2002), argues the search was proper because the agents mistakenly, but reasonably, believed that the search warrant allowed for the search. In Patterson, law enforcement officers obtained a valid search warrant authorizing the search of 2502 Haden Avenue, Richmond, Virginia. When agents arrived to execute the warrant, the Toyota RAV vehicle belonging to

**2.** In holding that the Pontiac was validly searched under the automobile exception to the warrant requirement, the district court noted the following facts: (1) the car was previously seen on the premises but was slightly off the premises when searched; (2) the keys to the car were found inside Smith's residence; (3) Smith was a co-owner of the car; (4) Smith and his confederates were alleged to have "moved about when disposing of controlled substances by way of vehicles"; (5) Smith and his confederates sold controlled substances out of vehicles; (6) a significant

amount of cash was found at Smith's residence; (7) there was a history of drug dealing on the premises; (8) residue was found in baggies in trash pulls at the residence; (9) guns were discovered in the residence; and (10) there were "other indica of a lifestyle" that would suggest drug dealing. The district court concluded that these facts gave the police officers probable cause to believe the car should be "if not immediately searched, at least taken as part of the seizure of vehicles used in the course of drug trafficking and inventory-searched." *Id.* at 648.

Patterson was parked in a gravel area in front of the house. Under those circumstances, the Court stated "we have little trouble concluding that the DEA agents investigating the Patterson property held an objectively reasonable belief that the gravel area in front of that property was part of the premises encompassed within their warrant.... Given the agents' observations during surveillance and the absence of any indication to the contrary, their belief that the gravel parking area was part of the Patterson property was objectively reasonable. And because the agents mistakenly perceived the Patterson property and the gravel parking area in front of that property as one and the same, their execution of the warrant reasonably included the gravel parking pad." *Id.* at 318. However, in this case, it was clear that the Escalade was not part of the residence and was parked on a city street. Accordingly, the mistaken, but reasonable belief argument is not available.

The motion to suppress the evidence found in the Escalade is GRANTED.

Defendant's motion to suppress (docket no. 151) is DENIED and GRANTED as stated above.