[Cite as *State v. Rigel*, 2017-Ohio-7640.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2016-CA-90 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-30 |
| | : | |
| NICHOLAS R. RIGEL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of September, 2017.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
  Attorney for Plaintiff-Appellee

CHARLES KOENIG, Atty. Reg. No. 0018358 and TODD LONG, Atty. Reg. No. 0082296, 5354 North High Street, Columbus, Ohio 43214
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Nicholas Rigel appeals the trial court's overruling of his motions to suppress evidence obtained during the investigation of a large-scale indoor marijuana production operation in Clark County run by him and his brother Timothy. Finding no error, we affirm.

## I. Background

{¶ 2} The Clark County Sheriff's Office began to investigate the operation in 2010. A confidential source told police that Rigel's brother was engaging in a "weed franchise" arrangement with tenants in rental properties, which the source knew because he had been a "franchisee." In 2012, another confidential source came forward and also described an operation in which Rigel's brother rented out houses with marijuana-growing operations inside. A tenant's job, said the source, was to watch over the growing marijuana. Timothy would then collect the finished product and take all of the evidence away to be destroyed. After he had sold the marijuana, Timothy paid the tenant a percentage based on the value of the growing operation. This source too had been such a tenant.

{¶ 3} In October 2014, a confidential informant told Detective Andrew Reynolds of the Sheriff's Office that he could buy marijuana from a man named Jacob Collins who lived at 310 Villa Road. The informant said that there was a marijuana-growing operation in the basement of the house. The informant also said that Collins used to live at 4303 Detrick-Jordan Pike, another property in Clark County, and that the informant had seen a similar growing operation there. Guided by Detective Reynolds, the informant successfully made two controlled buys that October from Collins at the Villa Road property.

{¶ 4} Detective Reynolds then did some research on the properties. He discovered that, according to county property records, the Villa Road and Detrick-Jordan Pike properties were owned by Herold Property Management LLC, which is owned by Rigel and his wife. Reynolds discovered that the LLC owned several other residential properties, including 1811 Hillside Avenue and 709 Mayhill Drive. Reynolds later determined that Rigel lived at the Mayhill Drive property and that Rigel rented out the other properties. Detective Reynolds obtained electricity-usage records for Rigel's properties and for comparable nearby properties. The records showed that, over the same period of time, several of Rigel's properties consumed significantly more electricity. Reynolds knew from experience that abnormally high electricity usage goes along with growing marijuana indoors. In March 2015, without obtaining a warrant, the Clark County Sheriff's Office had a video camera installed atop a utility pole that bordered the Detrick-Jordan Pike property. Major Russell Garman remotely monitored the camera from March 27 until August 12, and the camera was finally removed on October 13.

{¶ 5} Over the next several months, Detective Reynolds obtained several warrants to aid in the Sheriff's Office's investigation of the Rigel brothers. On April 16, he obtained a warrant allowing them to install a GPS tracking device on the van that Rigel drove to suspected marijuana-growing locations. The warrant authorized the tracking device for 45 days, and the issuing judge granted two 45-day extensions. On May 5, Reynolds obtained a warrant that allowed them to do a thermal-imaging scan of the houses on several properties, including the houses at the Detrick-Jordan Pike and Villa Road properties. On August 4, a warrant was issued allowing the use of a drug-sniffing dog at several properties, including Detrick-Jordan Pike and Villa Road. On August 10, Detective

Reynolds obtained a warrant authorizing the search of the houses on several properties, including the houses on the Villa Road and Detrick-Jordan Pike properties and Rigel's home on the Mayhill Drive property. Inside both the Villa Road and Detrick-Jordan Pike properties police found marijuana growing operations, including more than 50 mature plants and a large amount of harvested marijuana. In Rigel's home was found a spreadsheet listing the income, how many months rented, and utility and repair costs for several rental properties, including the Villa Road, Detrick-Jordan Pike, and Hillside Avenue properties. The same day that the properties were searched, August 12, another confidential source came forward and told Detective Reynolds that a similar marijuana-growing operation was in place at the Hillside Avenue property. Reynolds immediately obtained and executed a search warrant for the Hillside Avenue property. There, police found more marijuana-growing equipment.

{¶ 6} Rigel was indicted in January 2016 on nine counts for the crimes of engaging in a pattern of corrupt activity, cultivation of marijuana, and possession of marijuana. He filed six separate motions to suppress, targeting the five search warrants and the warrantless use of the pole camera. A hearing on the motions was held in September at which Major Garman and Detective Reynolds testified for the State. Rigel testified on the question of his standing to challenge the searches of the Detrick-Jordan Pike property. The trial court sustained the motion to suppress with respect to the dog-sniff warrant but overruled all the other motions to suppress. The court concluded that Rigel did not have standing to challenge the searches of the Detrick-Jordan Pike property. Ultimately, under a plea agreement, Rigel pleaded no contest to one count of third-degree felony cultivation

of marijuana at the Detrick-Jordan Pike property, and the remaining charges were dismissed. The court sentenced him to two years in prison.

{¶ 7} Rigel appealed.

## II. Analysis

{¶ 8} Rigel assigns seven errors to the trial court, all of which relate to the court's suppression decisions. The appeal of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

A. *Standing to challenge the searches of the Detrick-Jordan Pike property*

{¶ 9} The first assignment of error alleges that the trial court erred by concluding that Rigel lacked standing to challenge the searches of the Detrick-Jordan Pike property. But even assuming that Rigel does have standing, and that the trial court erred, Rigel fails to show that he was prejudiced. After concluding that Rigel lacked standing, the trial court went on to conclude that all the searches of the Detrick-Jordan Pike property were lawful. As our rulings on the second, fifth, and sixth assignments of error show, we agree that the searches were lawful. So even if Rigel has standing to challenge the searches, the evidence obtained from the searches would not have been suppressed.

{¶ 10} The first assignment of error is overruled.

B. *The warrantless use of the pole camera*

{¶ 11} The second assignment of error alleges that the trial court erred by not sustaining Rigel's motion to suppress the evidence obtained and derived from the pole camera watching the Detrick-Jordan Pike property. Rigel contends that the warrantless use of the camera constituted an unreasonable search and that the length of the period of monitoring made the use of the camera constitutionally unreasonable.

{¶ 12} One has no reasonable expectation of privacy in what he "knowingly exposes to the public." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We agree with the Sixth Circuit's holding in *United States v. Houston*, 813 F.3d 282 (6th Cir.2016), that the remote surveillance of a rural farm using a utility-pole camera without a warrant did not violate the property owner's reasonable expectations of privacy "because the camera recorded the same view of the farm as that enjoyed by passersby on public roads." *Houston* at 285; *see also United States v. Powell*, 847 F.3d 760, 773 (6th Cir.2017) (quoting the same). "[T]he Fourth Amendment," emphasized the court, "does not 'preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.' " *Id.* at 288, quoting *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986); *see also Powell* at 773 (quoting the same). In other words, the use of a utility-pole camera does not violate a property owner's reasonable expectations of privacy if the camera records the same view of the property as could be had by passersby on a public road.

{¶ 13} The use of the pole camera here did not constitute an unreasonable search. The camera recorded the same view of the Detrick-Jordan Pike property as could be had by passersby on Detrick-Jordan Pike, a public road. The camera sat atop a utility pole just off the property, on neighboring property, next to Detrick-Jordan Pike. The camera

could zoom in and out, tilt up and down, and rotate almost 360 degrees. The brightness could be controlled, but the camera did not have "night vision." The evidence shows that no fence, bushes, or other object obstructed the view of the property from the road.

{¶ 14} Rigel says that the vantage point atop a utility pole is dramatically different than that of a passerby driving down the road. We agree with the trial court that the difference is not as dramatic as Rigel seems to think. There is no evidence that the camera's elevated view gave it a better view. No privacy barrier, like hedges or a fence, blocked a passerby's view. So the camera's elevated vantage point was immaterial. Rigel also says that the camera could see inside the house. Rigel is correct that if the front door were open, the camera could see inside the house. But so could a passerby.

{¶ 15} Nor did the length of the period of monitoring here make the use of the pole camera constitutionally unreasonable. We also agree with *Houston*'s holding that "the long length of time of the surveillance does not render the video recordings unconstitutionally unreasonable." *Houston*, 813 F.3d 282, at 289. The length of a monitoring period alone does not render video recordings unconstitutionally unreasonable if it is possible for law enforcement to have engaged in live surveillance of the property for the length of the period of monitoring. *Id.* And even if law enforcement could not have conducted in-person surveillance for the whole period, said the court, the length of the use of the camera is not a problem if any member of the public driving on the roads bordering the property during the period of monitoring could have observed the same views captured by the camera. *Id.* As the court put it, "long-term warrantless surveillance via a stationary pole camera does not violate a defendant's Fourth

Amendment rights when it was possible for any member of the public to have observed the defendant's activities during the surveillance period." *Id.* at 290.

{¶ 16} Here, the camera was installed on March 27, 2015, and actively monitored until August 12. So active surveillance of the Detrick-Jordan Pike property lasted 138 days. As we said, no fence, bushes, or other object obstructed the view of the property from the road. During the active surveillance period, then, any passerby on Detrick-Jordan Pike road looking at the property would have seen the same thing that the camera saw.

{¶ 17} The second assignment of error is overruled.

### C. *The extensions of time to use the GPS tracking device*

{¶ 18} The third assignment of error alleges that the trial court erred by not sustaining Rigel's motion to suppress the evidence obtained and derived from the GPS tracking device attached to his van. Rigel contends that the issuing court should not have granted the State's motions to extend the time to use the tracking device because the warrant precludes extensions of time, the State's motions were not supported by additional affidavits, and the State failed to show good cause to extend the time. We find no reversible error in any of these contentions.

{¶ 19} Crim.R. 41 governs the issuance of tracking-device warrants and extensions of time. The rule pertinently provides:

If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing * * * the person or property to be tracked. * * * A tracking device warrant * * * shall specify the time that the device may be used, not to exceed 45 days. The court may, for good cause shown, grant one or more extensions

of time that the device may be used, for a reasonable period not to exceed 45 days each.

Crim.R. 41(C)(2). Here, the warrant authorized the use of the tracking device for 45 days. On the State's motions, the trial court granted two successive 45-day extensions. Neither motion for an extension was accompanied by an affidavit.

{¶ 20} Rigel contends that the GPS tracking-device warrant could not be extended under Crim.R. 41, because the warrant itself precludes extensions. The warrant states that the tracking device must be removed from Rigel's van no later than 45 days after the issue date "unless extensions of time are granted upon issuance of another warrant." Seizing on "issuance of another warrant," Rigel says that the State had to apply for a whole new tracking-device warrant. But the warrant also refers to "extensions of time." The issuing judge evidently did not think that the language in the warrant cited by Rigel precluded extensions—the judge granted two of them. Given that extensions of time are permitted by Crim.R. 41, we defer to the issuing judge's interpretation of the warrant.

{¶ 21} Rigel next contends that a motion to extend the time that a tracking device can be used must be supported by another affidavit. As the trial court pointed out, Crim.R. 41 does not say that an extension must be supported by an affidavit, saying only that a court may grant an extension "for good cause shown." Rigel fails to convince us that a judicially-imposed affidavit requirement is required.

{¶ 22} Lastly, Rigel contends that the State failed to show good cause to extend the time to use the GPS tracking device. In its first motion for an extension, the State explained why the extension was needed:

As this investigation has progressed, the Clark County Sheriff's Office has continued its investigation into the Rigel marijuana growing and trafficking operation in Clark County, Ohio. Detectives have obtained numerous electric records, conducted thermal imaging searches, and continue to conduct surveillance on the co-conspirators in this organization. Additional time is required to continue to track the location of Nicholas Rigel so as to determine additional marijuana growing, storage, and trafficking locations. Therefore extending this order for 45 days will enable them to do so. Detectives have also continued to observe Rigel engaging in activity consistent with illegal narcotics trafficking, and there is no indication that he will cease his illegal drug trafficking activity anytime in the near future.

We believe that the ongoing nature of the investigation in this case was sufficient to establish "good cause" to grant an extension.

{¶ 23} As a final matter, we note that even if the trial court did err by granting the extensions, we would overrule this assignment of error because Rigel fails to show prejudice. Rigel cites no evidence that suggests any GPS data of significance was collected during the extensions. We can find in the record references to GPS data in only two places—the affidavit supporting the warrant to search the Detrick-Jordan Pike, Villa Road, and Mayhill Drive properties and in the affidavit supporting the warrant to search the Hillside Avenue property. Both warrants state the same two facts, that GPS data showed that "on multiple occasions" Rigel traveled from his home to the Detrick-Jordan Pike or Villa Road property, and that on August 7, 2015, he traveled from his home to the Detrick-Jordan Pike property. Rigel's August 7, 2015 appearance at the Detrick-Jordan

Pike property was also evident from the pole camera at that location which recorded him carrying 15 gallons of water into the house, making the August 7, 2015 GPS travel data superfluous. Moreover, we conclude from our probable-cause reviews of the two referenced affidavits in later assignments of error, that even absent the "multiple occasions" when Rigel traveled to his properties reflected in the GPS data, the affidavits state more than enough other facts to justify issuing the search warrants.

{¶ 24} The third assignment of error is overruled.

### D. *Probable cause to issue the GPS tracking device warrant*

{¶ 25} The fourth assignment of error also alleges that the trial court erred by not sustaining Rigel's motion to suppress the evidence obtained and derived from the GPS tracking device. Rigel argues in this assignment of error that the affidavit supporting the warrant does not provide a substantial basis for concluding that probable cause exists.

{¶ 26} A search warrant may only be issued upon probable cause, usually supported by an affidavit, that contraband or evidence of a crime will be found. *See State v. Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11. In "determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular    place.' " *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates,* 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 27} "When reviewing the sufficiency of probable cause for the issuance of a search warrant, an appellate court should not substitute its judgment for that of the magistrate by conducting a de novo determination of sufficiency." *State v. Norris*, 2016-Ohio-5729, 76 N.E.3d 405, ¶ 19 (2d Dist.), citing *George* at paragraph two of the syllabus. Instead, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," and it "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus. Here, the affidavit supporting the application for the GPS tracking device warrant provides a substantial basis for concluding that probable cause existed.

{¶ 28} The affidavit states that the Clark County Sheriff's Office had been investigating a suspected marijuana growing operation being operated by Rigel and his brother. In October 2014, a confidential informant told law enforcement that he could buy marijuana from a man named Jacob Collins who lived at 310 Villa Road in Springfield. The informant said that the Villa Road residence contained an indoor marijuana growing operation in the basement that is run by Rigel's brother. In October, the informant made two separate, controlled purchases of marijuana from Collins at the Villa Road property. County property records showed that the Villa Road property was owned by Herold Property Management, LLC, which is owned by Rigel and his wife. The confidential informant told law enforcement that Collins had previously lived at 4303 Detrick-Jordan Pike in Springfield. According to property records, that property also was owned by Herold Property Management. Indeed, the property records showed that Herold Property

Management owned several residential properties in the area, including Rigel's residence at 709 Mayhill Drive. The affidavit states that the electric-service accounts for the Detrick-Jordan Pike, Villa Road, and Mayhill Drive properties were in Rigel's name. And the electric bills for these properties were all mailed to the Villa Road property. The affidavit states that electricity-usage records were obtained for several properties and that the usage at the Detrick-Jordan Pike and Villa Road properties was "extremely high." Based on this information and his training and experience, Detective Reynolds avers his belief that Rigel was operating marijuana-growing operations at the properties. The affidavit states that the target van was usually parked at Rigel's Mayhill Drive residence. "For the last 2 weeks," Reynolds avers, "Nicholas Rigel has been observed predominantly driving the Chevy Venture, especially in the evening when he has been observed going to and from the suspected grow locations." The GPS tracking device, the affidavit states, is needed to help find other marijuana grow locations, where Rigel was storing the harvested marijuana, where he was selling it, and where he was storing the proceeds from sales.

{¶ 29} After reviewing the affidavit, we agree that it is sufficient to give the issuing judge a substantial basis to conclude there was a fair probability that GPS tracking data of Rigel's van would lead to the discovery of contraband or evidence of marijuana production or sale.

{¶ 30} Rigel objects that the affidavit presents only hearsay allegations from the confidential informant and that the affidavit does not establish the informant's credibility. He says that the affidavit does not supply even minimal information about the informant

and does not even assert that the informant is reliable. Where a confidential informant is the source of hearsay in an affidavit, we have said that

> "the 'informant's veracity, reliability and basis of knowledge are all highly relevant' in a totality of the circumstances probable cause determination. [*Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] (internal quotations omitted). There must be some basis in the affidavit to indicate the informant's credibility, honesty or reliability. An affidavit which contains detailed information from informants (permitting an inference that illegal activity was personally observed by the informants), police corroboration of an informant's intelligence through its own independent investigation, or additional testimony by the affiant helps to bolster and substantiate the facts contained within the affidavit. While individual facts and statements themselves may not separately support a probable cause determination; a reviewing court must weigh all of the components together because '[p]robable cause is the sum total of [all] layers of information.' "

(Citations omitted.) *State v. Mitchell*, 2d Dist. Montgomery No. 25402, 2013-Ohio-622, ¶ 20, quoting *State v. Harry,* 12th Dist. Butler No. CA2008-01-0013, 2008-Ohio-6380, ¶ 20. *See also* Crim.R. 41(C)(2) (stating that "[t]he finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished"). The trial court found the informant truthful and reliable, based on

the success of the controlled marijuana buys. We see little reason to reject the court's credibility finding.

{¶ 31} Rigel also objects that the affidavit fails to establish a nexus between him and the alleged criminal activity of his brother and Jacob Collins. Rigel says that the affidavit contains no personal or first-hand knowledge of criminal activity committed by him. But Rigel owned the properties where police believed marijuana was being grown. The electricity bills showing unusually high usage were in his name. And he regularly visited the suspected properties. These facts are sufficient to justify a tracking-device warrant for his vehicle.

{¶ 32} The fourth assignment of error is overruled.

E. *Probable cause to issue the thermal-imaging warrant*

{¶ 33} The fifth assignment of error alleges that the trial court erred by not sustaining Rigel's motion to suppress the evidence obtained and derived from the thermal-imaging of the Detrick-Jordan Pike property. Rigel contends that the affidavit supporting the thermal-imaging warrant does not provide a substantial basis for finding probable cause.

{¶ 34} Detective Reynolds applied for a warrant authorizing law enforcement to conduct a thermal-imaging scan of the houses on several properties, including the houses on the Villa Road and Detrick-Jordan Pike properties. According to the supporting affidavit, police sought evidence of "dissipating heat, surface temperature variables and thermal image information which, when considered with other information developed in this case, may constitute evidence of a crime concerning the Manufacturing, Possession, or Delivery of * * * Marijuana." Evidently, the scan of the Villa Road property did not yield

results consistent with indoor marijuana production. There is nothing in the record about the scan of the Detrick-Jordan Pike property. Tellingly, the scan of that property is not cited in the subsequent search-warrant affidavits. So even if a substantial basis to issue the thermal-imaging warrant is lacking, Rigel fails to show that he was prejudiced.

{¶ 35} But we also believe that the supporting affidavit provides a substantial basis. The affidavit states that the Clark County Sheriff's Office has been investigating a suspected marijuana-growing operation run by Rigel and his brother. Then the affidavit discusses the confidential informant who came forward in October 2014. The affidavit provides the same information about the informant as that found in the GPS tracking-device affidavit. The thermal-imaging affidavit adds that the informant has a "personal relationship" with Jacob Collins, from whom the informant bought marijuana, and that the informant had visited Collins at the Detrick-Jordan Pike property, when Collins lived there. The affidavit reiterates that the Detrick-Jordan Pike property is owned by Herold Property Management and that electricity-usage records for the property show "extremely high Kilowatt (KWH) usage readings." Reynolds avers that he "reviewed usage for other residences of similar size to these for the same time periods in the same general area and found the consumption for the listed addresses to be significantly higher than the others." And the affidavit notes that the electricity bills for the Detrick-Jordan Pike and Villa Road properties were in Rigel's name and were sent to the Villa Road property. We agree with the trial court that this is enough to establish a substantial basis for concluding that probable cause existed.

{¶ 36} Rigel argues that the information in the thermal-imaging affidavit is stale. He points out that the confidential informant's controlled marijuana buys occurred in

October 2014 and that the electricity-usage records for the properties were from October 2013 through October 2014. Rigel says that by the time the thermal-imaging warrant was requested roughly seven months later, in May 2015, the information as to marijuana being grown at the properties was stale.

{¶ 37} We conclude that staleness is not a problem here. As a general matter, "[a]n affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time." (Citations omitted.) *State v. Marler,* 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 37. But "[n]o arbitrary time limit dictates when information becomes 'stale.' The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched." *Id.* "Evidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene,* 250 F.3d 471, 481 (6th Cir.2001). Here the affidavit shows that Rigel was engaged in an ongoing, marijuana-growing operation at several locations.

{¶ 38} Rigel fails to show that he was prejudiced by the thermal scans. And even if he had, based on the information presented in the affidavit, the issuing judge had a substantial basis for concluding that probable cause existed.

{¶ 39} The fifth assignment of error is overruled.

F. *Probable cause to issue the Detrick-Jordan Pike, Villa Road,*

*and Mayhill Drive properties search warrant*

{¶ 40} The sixth assignment of error alleges that the trial court erred by not sustaining Rigel's motion to suppress the evidence obtained and derived from the search of the Detrick-Jordan Pike, Villa Road, and Mayhill Drive properties. Rigel contends that

the affidavit supporting the search warrant does not provide a substantial basis for finding probable cause.

{¶ 41} The supporting affidavit states that information about the marijuana growing operation came from two confidential sources and from the confidential informant whom we have already discussed. According to the affidavit, the first confidential source told police in 2010 that Rigel's brother was engaging in a "weed franchise" arrangement with tenants in some of the rental properties that he owned, which the source knew because he had been a "franchisee." The second confidential source similarly described in 2012 how Rigel's brother was renting houses to people and then setting up marijuana growing operations inside the houses. A tenant's job, said the source, was to oversee the growing operation while living in the house. Rigel's brother would collect the finished product and take all of the other evidence away to be destroyed. After he had sold the marijuana, Rigel's brother would pay the tenant a percentage based on the value of the growing operation. The source knew all this, he said, because he had been one of those tenants. As for the confidential informant, the affidavit recounts the same information that is in the previous affidavits about the information that the informant provided in October 2014. This affidavit adds that the informant had seen the indoor marijuana growing operation at the Detrick-Jordan Pike property.

{¶ 42} The affidavit then talks about Detective Reynolds's findings in the county property records and in electricity-usage records for Rigel's properties. The information is largely the same as the information in the previous affidavits. But this affidavit adds a more detailed usage comparison between Rigel's properties and comparable nearby properties. The affidavit states that in May 2015, the pole camera at the Detrick-Jordan

Pike property captured Rigel carrying out of the house an exhaust fan that is commonly used for indoor marijuana growing. The affidavit also cites GPS tracking data that shows "on multiple occasions" that Rigel's van travelled directly from his Mayhill Drive residence to the Detrick-Jordan Pike property or the Villa Drive property. One such occasion is singled out in the affidavit in which tracking data showed that Rigel drove from his residence to the Detrick-Jordan Pike property and the pole camera at the property showed him carry over 15 gallons of water into the house. Detective Reynolds avers that he drove past the Detrick-Jordan Pike property and smelled "a strong odor of raw Marijuana coming from the residence."

{¶ 43} We agree with the trial court that these facts provide a substantial basis for finding probable cause to search the properties. As the court said, the affidavit blends "hearsay and conjecture, with some factual observations and knowledge gained from experience" to present "a picture of a large-scale operation involving Timothy Rigel and Nicholas Rigel in the indoor growing of marijuana at several structures around Clark County, Ohio." Rigel regularly traveled from his home on Mayhill Drive to the Villa Road and Detrick-Jordan Pike properties. The affidavit indicates that the confidential sources and confidential informant were credible. That the electricity usage was higher at Rigel's properties than at comparable nearby properties over the same period of time corroborates the confidential sources' and informant's statements that Rigel was growing marijuana inside his properties. *See State v. Thomas*, 10th Dist. Franklin No. 12AP-928, 2014-Ohio-1489 (saying that informant's information was corroborated by electricity-usage records, cited in affidavit, showing that appellee's residence had unusually high

usage compared to similar residences over the same period of time). As for Rigel's Villa Road residence, that it was his residence justified the search:

> "The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the commonsense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime."

*United States v. Kapordelis,* 569 F.3d 1291,1310 (11th Cir.2009), quoting *United States v. Green,* 634 F.2d 222, 226 (5th Cir.1981); *State v. Clayton*, 8th Dist. Cuyahoga No. 102277, 2015-Ohio-4370, ¶ 18 (quoting the same). *See also United States v. Williams*, 544 F.3d 683, 687(6th Cir.2008) (saying that "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking").

{¶ 44} The sixth assignment of error is overruled.

### G. *Probable cause to issue the Hillside Avenue search warrant*

{¶ 45} The seventh assignment of error alleges that the trial court erred by not sustaining Rigel's motion to suppress the evidence obtained and derived from the search of the Hillside Avenue property. Rigel contends that the affidavit supporting the search warrant does not provide a substantial basis for finding probable cause.

{¶ 46} The supporting affidavit recounts the information gleaned from the two confidential sources in 2010 and 2012 and from the confidential informant in 2014. It then reiterates the information presented in the affidavit for the search of the Detrick-Jordan Pike, Villa Road, and Mayhill Drive properties about the county property records, the

electricity-usage records, the GPS tracking data, the strong marijuana odor that Detective Reynolds detected at the Detrick-Jordan Pike property, and that Rigel was seen carrying over 15 gallons of water into the Detrick-Jordan Pike house. The affidavit then states that a search warrant was executed at the Detrick-Jordan Pike, Villa Road, and Wheel Street properties and that "sophisticated marijuana growing operations were located inside with a large number of mature plants located at each location, and a large amount of already harvested and drying marijuana was also located. In excess of at least 50 mature plants were located at each site."

{¶ 47} The affidavit then cites a third confidential source who, on August 12, 2015, told law enforcement that he too participated in Rigel's marijuana-growing operation. This confidential source provided a description of the operation that matches the descriptions provided by the other confidential sources. According to this source, Rigel was also growing marijuana at 1811 Hillside Avenue in Springfield. Detective Reynolds avers that he "had previously received information about a possible grow operation at 1811 Hillside Ave. from another source several months prior as well." A lieutenant with the Clark County Sheriff's Office went to the Hillside Avenue property, states the affidavit, and noticed that all of the house's windows appeared covered—just like all the other growing locations that had been discovered. According to the affidavit, the lieutenant could smell raw marijuana coming from the Hillside Avenue house.

{¶ 48} We agree with the trial court that this affidavit provides more than enough information to give a substantial basis for finding probable cause. The third confidential source's information is amply corroborated, so we accept the trial court's credibility finding.

{¶ 49} As a final matter, the State contends that Rigel does not have standing to challenge the search of the Hillside Avenue property. The State raised this standing issue at the suppression hearing, but the trial court did not address it in the suppression decision. Because we have concluded that the search warrant is valid, we need not address this standing issue for the first time on appeal. Even if Rigel does not have standing, the outcome is the same.

{¶ 50} The seventh assignment of error is overruled.

### III. Conclusion

{¶ 51} We have overruled each of the seven assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

Andrew Pickering
Charles Koenig
Todd Long
Hon. Douglas M. Rastatter